1   RONALD A. McINTIRE (State Bar No. 127407)
    MELORA M. GARRISON (State Bar No. 205408)
2   **PERKINS COIE** LLP
3   1620 26th Street, Sixth Floor
    Santa Monica, California  90404
4   Tel.: (310) 788-9900 / Fax: (310) 788-3399

5   THOMAS J. McLAUGHLIN (Admitted *Pro Hac Vice*)
6   ADAM N. STEINMAN (Admitted *Pro Hac Vice*)
    **PERKINS COIE** LLP
7   1201 Third Avenue, Suite 4800
    Seattle, Washington  98101
8   Tel.: (206) 359-8000 / Fax: (206) 359-9000

9   Attorneys for Defendant THE BOEING COMPANY
10

11              **UNITED STATES DISTRICT COURT**

12          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

13

14  ISAAC HUNG, et al.,                CASE NO. 03-3635 MMM (RNBx)

15              v.                     **SUR-REPLY OF DEFENDANT THE
                                       BOEING COMPANY IN SUPPORT
16  CHINA AIRLINES, et al.             OF MOTION TO DISMISS ON THE
                                       GROUNDS OF** *FORUM NON*
17                                     *CONVENIENS*; **SUPPLEMENTAL
                                       DECLARATIONS OF MELORA M.
18                                     GARRISON AND PROFESSOR
                                       SHENG-LIN JAN IN SUPPORT
19  IN RE: AIR CRASH OVER THE          THEREOF**
20  TAIWAN STRAIT ON MAY 25, 2002
21                                     Date:    June 21, 2004
                                       Time:    10:00 a.m.
22                                     Crtrm:   790
                                       Judge:   Hon. Margaret M. Morrow
23

24                                     This Document Relates to: All Cases
                                       *Except* Plaintiffs in Case No. 03-5705
25                                     (Lin) and Plaintiff Benita Pang in Case
                                       No. 03-593
26

27

28

061404/1047[LA041550.064] 01038-4117-000000

FILED
CLERK, U S DISTRICT COURT
JUN 1 5 2004
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

Priority ___
Send     ___
Enter    ___
Closed   ___
JS-5/JS-6 ___
JS-2/JS-3 ___
Scan Only ✓

DOCKETED ON CM
JUN 1 6 2004
BY                010

LODGED

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................1

II.   ARGUMENT .................................................................................3

   A.   Defendants Have A Legitimate Interest In Litigating These
        Actions In Taiwan; A Handful of Plaintiffs With U.S.
        Connections Does Not Diminish This Interest. ...............................3

        1.   With China Airlines' Agreement To Pay Full
             Compensatory Damages To The Article 28 Plaintiffs,
             There Is No Reason Why These Plaintiffs Would Try
             Liability In This Forum.......................................................4

        2.   *Forum Non Conveniens* Dismissal Is Also Appropriate For
             The Handful Of Cases With U.S. Connections. ...................5

        3.   Plaintiffs' Assertion That They Would Need To Present
             Liability Evidence Pursuant To Taiwanese Law Is
             Unsupported And Incorrect. .............................................. 10

   B.   Defendants' Stipulations Not To Contest Liability In Taiwan Or
        Other Non-U.S. Forum Is Simply A Condition Of Dismissal,
        And Should Be Weighed With The Other Private Interest
        Factors. ................................................................................... 13

   C.   Plaintiffs May Not "Insist On Proving" Liability. ......................... 14

SUPPLEMENTAL DECLARATION OF PROFESSOR SHENG-LIN JAN .. 17

SUPPLEMENTAL DECLARATION OF MELORA M. GARRISON............ 21

[LA041550.064] 01038-4117-000000                 i                Case No. 03-3635 MMM (RNBx)

Boeing's Sur-Reply in Support of Motion to Dismiss on *Forum Non Conveniens* Grounds; Supplemental
Declarations of Melora M. Garrison and Sheng-Lin Jan In Support Thereof

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Briggs v. Dalkon Shield Claimants Trust*, 174 F.R.D. 369 (D. Md.

4
1997)...................................................................................................15

5

*Cheng v. Boeing*, 708 F.2d 1406 (9th Cir. 1983)..................................... 2, 9, 13

6

*In re Disaster at Riyadh Airport*, 540 F. Supp. 1141 (D.D.C. 1982) ............ 8, 14

7

*Koirala v. Thai Airways Int'l, Ltd.*, 126 F.3d 1205 (9th Cir. 1997) ................. 16

8

*Lueck v. Sundstrand Corp.*, 236 F.3d 1137 (9th Cir. 2001) ........................... 2, 13

9

*Nai-Chao v. Boeing*, 555 F. Supp. 9 (N.D. Cal. 1982).........................................9

10

*Old Chief v. United States*, 519 U.S. 172 (1997)................................................ 15

11

*Pain v. United Technologies Corp.*, 637 F.2d 775 (D.C. Cir. 1980)................. 14

12

*Parr v. United States*, 255 F.2d 86 (5th Cir. 1958) ........................................... 16

13

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981)...................................... 2, 9, 13

14

*Zermeno v. McDonnell Douglas Corp.*, 246 F. Supp. 2d 646 (S.D. Tex.

15
2003).....................................................................................................2

16

**Statutes**

17

Taiwan Consumer Protection Law .................................................................. 10

18

Taiwan Consumer Protection Law, Article 10 ................................................. 11

19

Taiwan Consumer Protection Law, Article 42 ................................................. 11

20

Taiwan Consumer Protection Law, Article 7 ................................................... 11

21

Taiwan Consumer Protection Law, Article 8 ................................................... 11

22

Taiwan Consumer Protection Law, Article 9 ................................................... 11

23

24

25

26

27

28

[LA041550.064] 01038-4117-000000     ii     *Case No. 03-3635 MMM (RNBx)*

Boeing's Sur-Reply in Support of Motion to Dismiss on *Forum Non Conveniens* Grounds; Supplemental
Declarations of Melora M. Garrison and Sheng-Lin Jan In Support Thereof

# I. INTRODUCTION

In its May 14, 2004, Order, the Court directed plaintiffs to "address[ ] the effect of defendants' proposed stipulations on the pending motion[s]." Ignoring this directive, plaintiffs divert most of their efforts to accusing defendants of "manipulating" the forum and seeking "unfair advantage," and arguing that plaintiffs are not required to accept the stipulations. What plaintiffs largely ignore is the central issue: how the stipulations further support *forum non conveniens* dismissal.

Notably, the stipulations do *not* change the following:

➢ In addition to the plaintiffs themselves, the vast majority of whom are Taiwanese citizens, plaintiffs have identified literally hundreds of damages witnesses who are located in Taiwan. These witnesses are not within the plaintiffs' control or within this Court's subpoena powers. Thus, damages evidence is almost exclusively located in Taiwan, a factor that strongly weighs in favor of dismissal.

➢ The accident is being investigated by the Taiwanese governmental authorities, the Taiwan Aviation Safety Council ("ASC"). The ASC investigators, as well as the aircraft wreckage, which has been reconstructed in an aircraft hangar in Taiwan, are located in Taiwan, and are also outside this Court's subpoena powers.

➢ Evidence relating to China Airlines' alleged liability, including its repair and maintenance records for the subject aircraft, and its former and current mechanics, is primarily in Taiwan.

➢ There is no nexus between this accident and California. Plaintiffs' assertion that only the U.S. has an interest in Boeing aircraft has been explicitly rejected by the Ninth Circuit and, moreover, does not make sense given that the subject aircraft was owned and operated by a Taiwanese carrier to transport Taiwanese citizens in Taiwanese air space, and California had nothing to do with the production and operation of the subject aircraft. Plaintiffs have thus failed to

[LA041550.064] 01038-4117-000000    1    Case No. 03-3635 MMM (RNBx)
Boeing's Sur-Reply in Support of Motion to Dismiss on *Forum Non Conveniens* Grounds; Supplemental
Declarations of Melora M. Garrison and Sheng-Lin Jan In Support Thereof

identify why any public interest would be served by maintaining these lawsuits in California rather than in Taiwan. All public interest factors strongly weigh in favor of dismissal.

In fact, the only area where the stipulations have a significant impact on the pending motions is the private interest factor of whether the conveniences favor trying plaintiffs' liability claims against Boeing in California or in Taiwan[1] – the nearly exclusive focus of plaintiffs' original opposition. With the stipulations, plaintiffs' arguments that Boeing's evidence is located in the United States (although not in California) have been severely compromised. Plaintiffs, however, insist that they would have to present liability evidence under Taiwanese law in order to recover punitive damages. Relying solely on a single, unverified web site, plaintiffs fail to submit any reliable evidence in support of their argument that Taiwan's Consumer Protection Law ("CPL") allows the recovery of punitive damages under these circumstances. In contrast, Boeing's Taiwanese law expert's declaration, attached hereto, states that the CPL, by its own terms, only applies to conduct after its enactment, January 13, 1994, and does not apply retroactively to conduct prior to that date. Thus, the CPL would not cover the design, manufacture or distribution of the aircraft, which was delivered to China Airlines on August 2, 1979 – 23 years prior to the subject accident, and 15 years before the enactment of the CPL. Nor would the CPL apply to the 1980 tailstrike repair that is the focus of the accident investigation. And with respect to any post-sale duty to warn, the CPL does not create a private cause of action, much less a right to collect punitive

---

[1] As discussed in Boeing's reply brief, even without the stipulations, the *forum non conveniens* case law uniformly provides that foreign aviation accidents involving foreign air carriers, primarily foreign plaintiffs, and U.S. products manufacturers should be tried in the foreign forum. *See, e.g., Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981); *Lueck v. Sundstrand Corp.*, 236 F.3d 1137 (9th Cir. 2001); *Cheng v. Boeing*, 908 F.2d 1406 (9th Cir. 1983); *see also Zermeno v. McDonnell Douglas Corp.*, 246 F. Supp. 2d 646 (S.D. Tex. 2003).

[LA041550.064] 01038-4117-000000            2                    Case No. 03-3635 MMM (RNBx)

Boeing's Sur-Reply in Support of Motion to Dismiss on *Forum Non Conveniens* Grounds; Supplemental Declarations of Melora M. Garrison and Sheng-Lin Jan In Support Thereof

1   damages.  Further, plaintiffs' insistent focus on Boeing ignores that evidence

2   relating to China Airlines is in Taiwan, a factor that strongly favors *forum non*

3   *conveniens* dismissal.  In any event, a Taiwanese court would be best suited to

4   interpret its own laws on punitive damages, which, after all, were evidently intended

5   to protect Taiwanese citizens against harm suffered in Taiwan.

6        In sum, plaintiffs have failed to refute that the effect of the stipulations is that

7   plaintiffs will likely not have to try liability against either defendant in any forum,

8   and, if they so chose, would receive the full measure of their compensatory damages

9   in their home forum.

## II.    ARGUMENT

11  **A.    Defendants Have A Legitimate Interest In Litigating These Actions
        In Taiwan; A Handful of Plaintiffs With U.S. Connections Does
        Not Diminish This Interest.**

13        Contrary to plaintiffs' repeated and unfounded accusations,[2] defendants have

14  a sincere and legitimate interest in having these cases tried in the forum of the

15  decedent passengers' domicile as the only forum where defendants can obtain full

16  access to all damages evidence.  In addition to plaintiffs themselves, the vast

17  majority of whom are residents and/or citizens of Taiwan, plaintiffs ignore that they

18  have identified literally hundreds of third-party damages witnesses located in

19  Taiwan.  *See* Boeing's Reply at 14:10-16:10.  These witnesses, whom plaintiffs

20  cannot deny are relevant to proving their damages, are not within plaintiffs' control,

21  and more importantly, not within this Court's subpoena powers.  As discussed in

22  Boeing's reply brief, the unfairness of plaintiffs' "offer" to select their best damages

---

25        [2] Boeing will not address plaintiffs' arguments that the stipulations, or the
    timing of the stipulations, were made for an improper purpose other than to reiterate
26  that it took months for the involved parties, including China Airlines' Board of
    Directors, to agree to all material provisions.  Further, it is not necessary for the
27  parties to reveal the irrelevant details of the agreement, which were negotiated in
    good faith, and with an aim towards resolving this litigation fairly and efficiently.

Boeing's Sur-Reply in Support of Motion to Dismiss on *Forum Non Conveniens* Grounds; Supplemental
Declarations of Melora M. Garrison and Sheng-Lin Jan In Support Thereof

evidence for presentation in the U.S. cannot be remedied. *Id.* Plaintiffs' silence on this issue is telling; they do not contest that the vast majority of their damages evidence is located outside the U.S. Rather, plaintiffs focus on the handful of cases that have some U.S. connections. Essentially, plaintiffs are advocating that the Court retain actions brought on behalf of 121 passengers, including the 111 passengers who were indisputably Taiwanese nationals, because of two actions brought on behalf of three passengers whose claims are governed by the Warsaw Convention, and a handful of other cases with a smattering of U.S. connections. Plaintiffs' arguments fail for the reasons stated below.

1.  **With China Airlines' Agreement To Pay Full Compensatory Damages To The Article 28 Plaintiffs, There Is No Reason Why These Plaintiffs Would Try Liability In This Forum.**

Plaintiffs argue that the plaintiffs suing on behalf of three passengers whose claims are governed by the Warsaw Convention would continue to "adduce liability evidence" against Boeing even though they would receive 100% of their damages from China Airlines. *See* Response at 10:5-16. Looking past the rhetoric, it is clear that the Article 28 plaintiffs would not gain anything (indeed, they would have much to lose) from pursuing their claims against Boeing when they can obtain full compensatory damages from China Airlines. After obtaining 100% of their damages, these plaintiffs would not be entitled to any further damages, even if they somehow could prove their claims against Boeing.[3] Thus, although theoretically true that plaintiffs could pursue Boeing, there is no legitimate reason why these plaintiffs would, when they would not be entitled to any further damages after fully

---

[3] Plaintiffs suggest that under Boeing's choice-of-law arguments they would be entitled to punitive damages under Taiwanese law if DOHSA applied to their claims. *See* Response at 15:20-16:4. As discussed *infra*, plaintiffs' assertion that they would be entitled to punitive damages under Taiwanese law is seriously flawed, and in any event, does not justify retaining the cases subject to this motion.

[LA041550 064] 01038-4117-000000                4                *Case No. 03-3635 MMM (RNBx)*

Boeing's Sur-Reply in Support of Motion to Dismiss on *Forum Non Conveniens* Grounds; Supplemental
Declarations of Melora M. Garrison and Sheng-Lin Jan In Support Thereof

1   recovering from China Airlines.  Moreover, it simply makes no sense that these

2   plaintiffs would forego full damages from China Airlines in favor of mounting an

3   expensive and time-consuming trial against Boeing, especially given the facts of the

4   accident and the tenuous theories against Boeing.[4]  Boeing, in reality, has become

5   superfluous in these cases, with China Airlines' agreement not to contest liability for

6   compensatory damages.

7       **2.    *Forum Non Conveniens* Dismissal Is Also Appropriate For**
            **The Handful Of Cases With U.S. Connections.**
8

9       Plaintiffs incorrectly argue that it would be improper to require certain cases

10  with U.S. connections to be litigated in a foreign forum.  Response at 10:17-11:6.

11  The facts adduced during *forum non conveniens* discovery, however, demonstrate

12  that all of these are appropriately litigated in Taiwan, even if the quantum of

13  damages is the only issue to be decided.[5]

14      ***Decedents Johnson Hung & Wu Wei-Chin Hung:***  Both decedents (a

15  married couple) were Taiwanese citizens who, according to plaintiff's deposition

16  testimony, split their time between Taiwan and the U.S.  Supplemental Declaration

17  of Melora M. Garrison ("Supp'l Garrison Decl."), attached hereto, ¶ 8, Ex. G

18

19  _____

20      [4] Plaintiffs complain that Boeing is seeking to "foment a conflict of interest"
    for pointing out the fact that the interests of the non-Warsaw plaintiffs and the

21  Warsaw plaintiffs may be at odds.  *See* Response at 17:5-15.  In their professed
    outrage, plaintiffs notably fail to explain why the Warsaw plaintiffs would want to

22  engage in a complicated, expensive, and risky trial on liability against Boeing when
    they would receive their full measure of damages from China Airlines.  *See id.*

23

24      [5] Plaintiffs did not file or serve two of the cases mentioned in their briefs until

25  after defendants had filed their motions to dismiss, and after the *forum non
    conveniens* discovery cut-off.  Plaintiffs have not provided discovery responses with

26  respect to these cases in spite of Boeing's request to provide expedited responses.
    Supplemental Declaration of Melora M. Garrison, attached hereto, ¶ 2, Ex. A.

27  These cases involve four decedents: Ya-Kuang Guh-Jin, Po-Wen Guh, Jyh-Hei Guh,

28  and Cheng-Chien Lee.

Boeing's Sur-Reply in Support of Motion to Dismiss on *Forum Non Conveniens* Grounds; Supplemental
Declarations of Melora M. Garrison and Sheng-Lin Jan In Support Thereof

(Response No. 4(c)); ¶ 3, Ex. B (Deposition of Isaac Hung ("Hung Dep.") at 44:15-18).  The funeral occurred in Taiwan, and the decedents' estate is being handled there.  *Id.*, ¶ 3, Ex. B (Hung Dep. at 61:4-13; 67:21-22).  At the time of the accident, decedents owned 22 properties in Taiwan, including their home in Taipei, but they did not own a home in the U.S.  *Id.*, ¶ 8, Ex. G (Supp'l Response No. 4(g)); ¶ 3, Ex. B (Hung Dep. at 47:12-48:5; 53:11-24; 64:19-25; 75:13-21).  All financial and tax records that have been produced are in Chinese.  *Id.*, ¶ 14.  Although plaintiff Isaac Hung (decedent Johnson Hung's biological son) is a U.S. citizen, he testified in deposition that he was adopted by another man at age 15 before moving to the U.S.  *Id.*, ¶ 3, Ex. B (Hung Dep. at 15:16-17:24).  Plaintiff was informed that, because of his adoption, it has been determined in Taiwan that plaintiff is not a proper heir to the decedents' estate.  *Id.* at 33:18-24; 55:17-56:12.  While plaintiff is challenging this finding and claims that he still considers the decedents to be his real parents, the critical evidence regarding these issues will be located in Taiwan and is in Chinese.

*Decedents Pai-Hung Shih & Peng-Yu Shih:*  Both decedents (a father and daughter) were Taiwanese citizens residing in Taiwan.  *See* Ex. 62 to Response; Supp'l Garrison Decl., ¶ 9, Ex. H (Response No. 4(c)).  The father practiced medicine and owned a hospital in Taiwan (Supp'l Garrison Decl., ¶ 4, Ex. C (Deposition of Liang-Kuang Shih ("Shih Dep.") at 22:23-23:20; 24:3-18), and all financial records that plaintiffs produced are in Chinese.  *Id.*, ¶ 14.  Although plaintiffs state in their Response that they reside in California, deposition testimony confirms that they spent half of their time in Taiwan.  *Id.*, ¶ 4, Ex. C (Shih Dep. at 9:10-11:22).  One of the two beneficiaries identified in plaintiffs' discovery responses currently lives in Taiwan in an apartment owned by decedent's father.  *Id.* at 8:8-9:12.

*Decedent Che Ming Lung:*  Decedent was a Taiwanese citizen who resided in Taiwan up until the end of 2001, when he took a job in the People's Republic of

China (PRC).  Supp'l Garrison Decl., ¶ 10, Ex. I (Response No. 4(c) & (e)); ¶ 5, Ex. D (Deposition of Ko-Chung Lung ("Lung Dep.") at 19:24-20:3).  His bank accounts were located in Taiwan and the PRC.  *Id.*, ¶ 5, Ex. D (Lung Dep. at 20:15-25).  Decedent's wife and children, who are plaintiffs, are Taiwanese citizens who remained in Taiwan when decedent moved to the PRC.  *Id.*, ¶ 10, Ex. I (Response No. 4(c) & (e)); ¶ 5, Ex. D (Lung Dep. at 16:20-24).  Although decedents' parents, who are also plaintiffs, recently became US citizens, they spent the great majority of their time during the last two years in Taiwan.  *Id.*, ¶ 5, Ex. D (Lung Dep. at 6:17-7:1; 15:5-16:4).

**Decedent Yi-Sen Ku:**  Decedent was a Taiwanese citizen who operated a business in Taiwan.  *See* Ex. 62 to Response; Supp'l Garrison Decl., ¶ 6, Ex. E (Deposition of Helen Chu Fang-Ku Chen ("Chen Dep.") at 30:24-31:12; 32:1-11).  Although plaintiffs state in their Response that decedent resided in California, deposition testimony confirms that he also resided in Taiwan.  *Id.* at 25:6-30:23.  Decedent owned the apartment where he lived in Taiwan and was the only resident there, whereas during his visits to the U.S. he stayed at his sister's house.  *Id.*  Decedent's estate is set up in Taiwan.  *Id.* at 61:13-17.

**Decedent Li-Kuo Shen:**  Decedent was a dual citizen of Taiwan and the U.S. who worked for China Airlines in Taiwan.  Supp'l Garrison Decl., ¶ 11, Ex. J (Response No. 4(c) & (f)).  All of decedent's bank accounts are located in Taiwan.  *Id.* (No. 4(h)).  Discovery responses confirm that plaintiffs (the decedent's parents) were residents and citizens of Taiwan, contrary to plaintiffs' statements in their Response.  *Id.* (No. 4(c) & (e)).

**Decedent Chun Ruey Wu:**  Decedent was a Taiwanese citizen.  Supp'l Garrison Decl., ¶ 7, Ex. F (Deposition of William Wu ("Wu Dep.") at 26:20-24).  He lived in the home he owned in Taiwan at the time of his death and generally spent six to eight months out of the year living and working in Taiwan.  *Id.* at 29:21-30:13; 31:5-9; 34:10-13.  Other than two property tax bills, all financial records are

1   in Chinese, and the burial costs were incurred in Taiwan. *Id.*, ¶ 14; ¶ 7, Ex. F (Wu

2   Dep. at 47:16-19); ¶ 13, Ex. L. The three plaintiffs (decedent's wife, daughter, and

3   son) are citizens of both Taiwan and the U.S., and two of them currently reside in

4   Taiwan. *Id.*, ¶ 7, Ex. F (Wu Dep. at 11:8-12; 13:5-23; 16:21-23; 18:3-5; 20:23-21:6;

5   26:16-19). Notably, plaintiffs did not even include this case on the list of cases with

6   claimed U.S. connections that they filed with their opposition. *See* Ex. 26 to Opp.

7   **Decedent Yin Yuchih:** Decedent was a Taiwanese citizen and retired

8   member of the Taipei city council. Supp'l Garrison Decl., ¶ 12, Ex. K. He resided

9   in Taiwan, although discovery responses also list the Illinois address belonging to

10  his eldest daughter. *Id.* All financial records produced are in Chinese and burial

11  costs were incurred in Taiwan. *Id.* While one plaintiff (the eldest daughter) is a

12  U.S. citizen and resident, the remaining four (decedent's wife, two sons, and

13  youngest daughter) are all Taiwanese residents, although discovery responses list

14  the eldest daughter's Illinois address as a second address for decedent's wife. *Id.*

15  Again, plaintiffs did not even include this case on the list of cases with claimed U.S.

16  connections that they filed with their opposition. *See* Ex. 26 to Opp.

17      As the summary above demonstrates, all decedents subject to this motion for

18  whom discovery has been received resided abroad, and critical damages-related

19  evidence is located outside the U.S. Even if some of the decedent's **heirs** reside

20  exclusively in the U.S., that is not dispositive for purposes of *forum non conveniens*,

21  because evidence relating to damages is most likely located in the **decedent's**

22  domicile. *See In re Disaster at Riyadh Airport*, 540 F. Supp. 1141, 1147 (D.D.C.

23  1982) ("It seems beyond dispute that the vast majority, and most likely all, of the

24  evidence relating to measurement of the damages suffered by plaintiffs is located in

25  the domicile of each foreign decedent.").

26      Moreover, the presence of between nine and 14 U.S. citizen plaintiffs out of

27  approximately 370 plaintiffs is not sufficient to alter the balance of private and

28

[LA041550.064] 01038-4117-000000                8                *Case No. 03-3635 MMM (RNBx)*

Boeing's Sur-Reply in Support of Motion to Dismiss on *Forum Non Conveniens* Grounds; Supplemental
Declarations of Melora M. Garrison and Sheng-Lin Jan In Support Thereof

1  public interest factors in favor of the Taiwanese forum.[6] *See Nai-Chao*, 555 F.

2  Supp. 9, 21 (N.D. Cal. 1982) ("Although recognizing the deference properly

3  accorded to a plaintiff's choice of forum, particularly in regard to the American

4  plaintiffs in this action, the Court finds that the plaintiffs' choice of an American

5  forum is here outweighed by the private and public interest factors pointing towards

6  dismissal of this action, and that the presence of a handful of American plaintiffs

7  does not preclude such dismissal."). The *Nai-Chao* court found that *forum non*

8  *conveniens* dismissal was proper, and the Ninth Circuit affirmed the holding, despite

9  the presence of seven U.S. citizen plaintiffs and four U.S. resident plaintiffs. *See id.*

10  at 10, 21-22; *Cheng*, 708 F.2d at 1408. As the Supreme Court found in *Piper*: "A

11  citizen's forum choice should not be given dispositive weight." *Piper*, 454 U.S. at

12  256. The presumption in favor of a plaintiff's choice of forum "is by no means

13  absolute, but rather must be evaluated in the context of the many other factors

14  relevant to the convenience of the parties and of the Court." *Nai-Chao*, 555 F.

15  Supp. at 21.

16      Finally, plaintiffs' claim that the "proposed stipulation disregards American

17  domiciliaries" because it "comes into effect only if, after dismissal, plaintiffs file

18  suit anew 'in the country of their decedent's domicile,'" is simply wrong. Response

19  at 14:13-15:2. As clearly set forth in defendants' Notification, defendants'

20  stipulation applies to any plaintiff who, following *forum non conveniens* dismissal,

21  files an action against China Airlines and/or Boeing in Taiwan. Notification at 2:14-

22  17 ("CAL and/or Boeing agree to fully compensate the plaintiffs in Taiwan (or other

23  non-U.S. country of a decedent's domicile) and to dispute only the quantum of

24  compensatory damages in the foreign forum."). Thus, following *forum non*

---

26      [6] In an exhibit in support of their opposition, plaintiffs claimed that there were
27  a total of nine U.S. citizen plaintiffs. *See* Ex. 26 to Opp. In an exhibit in support of
    their more recent filing, plaintiffs claim that there are a total of 14 U.S. citizen
28  plaintiffs. *See* Ex. 62 to Response.

Boeing's Sur-Reply in Support of Motion to Dismiss on *Forum Non Conveniens* Grounds; Supplemental
Declarations of Melora M. Garrison and Sheng-Lin Jan In Support Thereof

*conveniens* dismissal, U.S.-domiciled plaintiffs who file suit in Taiwan will benefit from the same stipulation not to contest liability as Taiwanese domiciliaries. As discussed above, even in the handful of cases involving U.S.-domiciled plaintiffs, the vast majority of decedents' damages evidence is located in Taiwan, and all other factors weigh in favor of dismissal of these cases on *forum non conveniens* grounds.

### 3. Plaintiffs' Assertion That They Would Need To Present Liability Evidence Pursuant To Taiwanese Law Is Unsupported And Incorrect.

Finally, plaintiffs argue, without any evidentiary support beyond an unauthenticated web site, that Taiwan's Consumer Protection Law ("CPL") applies to their claims against Boeing, and they would be entitled to recover double damages if they proved negligence, and treble damages if they proved willful misconduct.[7] Response at 11:18-12:17. Plaintiffs thus assert that they would have to present liability evidence under Taiwanese law regardless of defendants' stipulations.[8] *Id.* In making this argument, plaintiffs ignore two important facts: (1) evidence as to China Airlines' alleged liability is in Taiwan; thus, even if plaintiffs

---

[7] Plaintiffs' only evidentiary sources are to citations to the Consumer Protection Commission, Executive Yuan, Republic of China's web site. *See* Response at 12:4-5 & fn. 8. The web site citations stand in stark contrast to the detailed Taiwanese law expert declarations submitted by both sides on an array of other issues. In addition to suffering obvious hearsay and authenticity problems, the web site does not explain how or if the CPL would apply to Boeing in these circumstances. Similarly, plaintiffs' citation to the deposition transcripts of China Airlines' and Boeing's Taiwanese law experts do not support plaintiffs' arguments, which simply state that the CPL applies to products liability claims, but do not address the issue of punitive damages in the particular circumstances of this case. *See* Shao Dep. (Ex. 63) at 38:6-19; Jan Dep. (Ex. 66) at 27:15-28:2.

[8] Although plaintiffs speculate (again without authority) that the Taiwanese courts may not accept defendants' stipulations (Response at 11:14-16), Boeing's expert declares that under Taiwanese law, such an agreement would be "valid and enforceable." *See* Supplemental Declaration of Professor Sheng-Lin Jan, attached hereto, ¶¶ 2-8.

[LA041550.064] 01038-4117-000000     10     *Case No. 03-3635 MMM (RNBx)*

Boeing's Sur-Reply in Support of Motion to Dismiss on *Forum Non Conveniens* Grounds; Supplemental Declarations of Melora M. Garrison and Sheng-Lin Jan In Support Thereof

1   were correct, the ease of access to sources of proof as to China Airlines would still

2   be in Taiwan; and (2) a Taiwanese court would be best suited to apply its laws

3   regarding punitive damages under the CPL.  In any event, plaintiffs' arguments are

4   incorrect.

5        Plaintiffs describe their allegations against Boeing as follows: "Boeing

6   designed, manufactured and distributed a dangerous product, negligently provided

7   services relating to it, and failed to warn of the dangers."  Response at 11:26-12:1.

8   The CPL, however, only makes actionable conduct *after* January 13, 1994, when it

9   was enacted.  *See* Supplemental Declaration of Professor Sheng-Lin Jan ("Supp'l

10  Jan Decl."), attached hereto, ¶ 10 (Article 42 of the CPL Enforcement Rules

11  provides that "The Law does not apply to goods already circulated into the market

12  or services already provided prior to the implementation of the Law.").  The CPL

13  thus would not apply to the design, manufacture, or distribution of the subject

14  aircraft, which occurred in 1979 – 15 years prior to the enactment of the CPL.  *Id.*

15  The CPL also would not apply to the 1980 tailstrike repair that is at the focus of the

16  ASC's investigation.  Thus, only plaintiffs' allegations of Boeing's conduct between

17  1994 and 2002 could possibly be at issue.  But even as to post-1994 conduct, it is

18  doubtful that punitive damages are available under the CPL.  Notably, Article 10 of

19  the CPL, which governs a manufacturer's post-sale duty to warn, does not contain

20  an express cause of action that creates liability to consumers on a post-sale duty to

21  warn theory.  *Id.*, ¶ 11.  By contrast, other provisions of the CPL (such as Article 7,

22  which governs designers, producers, and manufacturers of goods and services;

23  Article 8, which governs distributors of goods and services; and Article 9, which

24  governs importers of goods and services) expressly state that they create liability to

25  consumers, if the goods or services are defective.  *Id.*  To date, no case in Taiwan

26  has allowed a private claim for punitive damages under the CPL for a violation of

27  Article 10.  *Id.*, ¶ 12.

28

[LA041550.064] 01038-4117-000000                    11                    *Case No. 03-3635 MMM (RNBx)*

Boeing's Sur-Reply in Support of Motion to Dismiss on *Forum Non Conveniens* Grounds; Supplemental
Declarations of Melora M. Garrison and Sheng-Lin Jan In Support Thereof

1    In any event, a close examination of plaintiffs' Opposition reveals that
2  plaintiffs' theories against Boeing, even if proven, do not support a basis for
3  liability.  For example, plaintiffs' primary allegations against Boeing focus on the
4  FAA's attempt to address "aging aircraft" and that "Boeing was a major participant"
5  in this effort.  *See* Opp. at 6:3-8:15.  Plaintiffs allege that in "March 1997, Boeing
6  sent the FAA the Final Report of the AAWG [Airworthiness Assurance Working
7  Group] on Structural Repair issues."  *Id.* at 7:1-20.  Plaintiffs, however, fail to allege
8  what, if anything, was "negligent" about Boeing's report.  *Id.*  Similarly, plaintiffs
9  allege that around this same time, on December 15, 1995, Boeing "finalized its 747
10  RAGs [Repair Assessment Guidelines]."  *Id.* at 7:21-8:3.  Although plaintiffs allege
11  that the RAGs were necessary "because Boeing's maintenance program did not
12  provide for adequate inspections for these types of repairs," plaintiffs admit that
13  Boeing provided the RAGs to China Airlines in May 2000 – two years prior to the
14  accident.[9]  *Id.* at 8:4-6.

15    Moreover, plaintiffs overlook the fact that information publicly released by
16  the ASC indicates that break-up of the aircraft originated in an area where the repair
17  effected by China Airlines was not done according to Boeing's recommendations in
18  the first place.  *See* Boeing's Mot. at 5:11-6:2.  When a manufacturer recommends
19  that customers follow certain procedures for repairing a product, neither general
20  Taiwanese tort law nor the CPL requires the manufacturer to recommend
21  inspections to confirm that the repair recommendations were followed.  Supp'l Jan
22  Decl., ¶ 13.  It is clear that plaintiffs are simply trying to draw a false inference of
23  wrongdoing by exaggerating Boeing's alleged role in the accident in order to justify
24  the selection of a U.S. forum.  Similar strategies have been rejected by the U.S.

25

26    [9] Although plaintiffs contend that Boeing "failed to provide the Boeing RAGs
27  to CAL until May 2000," plaintiffs fail to explain how this "failure" was a cause of
the accident, given that China Airlines admittedly received them two years prior to
28  the accident.

[LA041550.064] 01038-4117-000000                    12                    *Case No. 03-3635 MMM (RNBx)*
Boeing's Sur-Reply in Support of Motion to Dismiss on *Forum Non Conveniens* Grounds; Supplemental
Declarations of Melora M. Garrison and Sheng-Lin Jan In Support Thereof

Supreme Court and the Ninth Circuit. *See Piper; Cheng; Lueck.* Plaintiffs'
allegations regarding Boeing's conduct from 1994 to 2002 do not outweigh the fact
that evidence relating to China Airlines would be more relevant, both in terms of
quantity and quality. China Airlines, after all, was in possession of the aircraft for
23 years prior to the accident. Moreover, a Taiwanese court should interpret its own
laws, including whether punitive damages would be available under the CPL. For
these reasons, the private interest factor as to the location of liability evidence would
still favor Taiwan.

**B.     Defendants' Stipulations Not To Contest Liability In Taiwan Or
         Other Non-U.S. Forum Is Simply A Condition Of Dismissal, And
         Should Be Weighed With The Other Private Interest Factors.**

Plaintiffs' argument that they are "not required to accept" the defendants'
agreement not to contest liability misses the point. Defendants are agreeing not to
contest liability as a *condition* of dismissal, just as defendants have agreed, as
conditions to dismissal, to submit to the jurisdiction of the Taiwanese courts and not
to raise the statute of limitations as an affirmative defense in the Taiwanese courts.
Conditions to dismissal are common in the *forum non conveniens* context. These
conditions (which the Court can impose upon any *forum non conveniens* dismissal)
allow the Court to ensure that an adequate alternative forum exists, and that
plaintiffs would not be left without a remedy in the alternate forum. Defendants
obviously do not need plaintiffs' consent in submitting to these conditions. Rather,
such conditions are enforceable because plaintiffs will be allowed to refile these
actions in the U.S. if defendants do not comply with them. Accordingly, no
amendment to the pleadings or any other formality is required.

Here, defendants are simply offering another stipulation. They are
eliminating the only private interest factor that could conceivably weigh in favor of
the U.S. forum, and the one factor to which plaintiffs devoted most of their
opposition. Plaintiffs attempt to distinguish the cases cited by Boeing where other

Boeing's Sur-Reply in Support of Motion to Dismiss on *Forum Non Conveniens* Grounds; Supplemental
Declarations of Melora M. Garrison and Sheng-Lin Jan In Support Thereof

1  district courts have weighed the condition as an additional factor favoring dismissal,

2  but can cite only to superficial differences. *See* Response at 19:21-24:3. Plaintiffs'

3  objections to these cases are easily addressed. The Court could simply weigh the

4  private interest factors with the condition and without the condition as the district

5  court for the District of Columbia did in *In re Disaster at Riyadh Airport*, 540 F.

6  Supp. 1141 (D.D.C. 1982) and *Pain v. United Technologies Corp.*, 637 F.2d 775

7  (D.D.C. 1980). Under either analysis, the case law directs that the private interest

8  factors weigh in favor of dismissal. *See* Boeing's Mot. at 11:12-24:24; Boeing's

9  Reply at 19:15-23:16. The condition not to contest liability makes it even more

10  obvious that the conveniences weigh in favor of the foreign forum.

11  **C.    Plaintiffs May Not "Insist On Proving" Liability.**

12         With defendants' stipulations to fully compensate plaintiffs in the forum of

13  their decedents' domicile, plaintiffs desperately search for any excuse why they

14  should be permitted to mount an expensive, time-consuming, and ultimately

15  unnecessary liability trial. Plaintiffs' suggestion that they retain the right to present

16  liability-related evidence despite defendants' agreement not to contest liability in the

17  foreign forum is misplaced for a number of reasons. First, plaintiffs rely exclusively

18  on U.S. cases to establish their hypothetical right to present liability evidence in this

19  situation. For purposes of defendants' no-contest agreement, however, the key issue

20  is whether liability-related evidence would be required in the ***foreign*** forum.[10]

21  Plaintiffs do not even attempt to argue that the courts in Taiwan (or any other

22  foreign forum) would permit plaintiffs to present such evidence. In fact, Taiwanese

23  courts are not required to allow plaintiffs to present liability evidence where, as

24  here, defendants have agreed not to contest that issue. Supp'l Jan Decl., ¶ 9.

25

26

27         [10] In any event, the authority cited by plaintiffs goes to whether liability-
related evidence might be admissible in a ***U.S.*** court, which is not the relevant

28  inquiry.

[LA041550.064] 01038-4117-000000                    14                    *Case No. 03-3635 MMM (RNBx)*
Boeing's Sur-Reply in Support of Motion to Dismiss on *Forum Non Conveniens* Grounds; Supplemental
Declarations of Melora M. Garrison and Sheng-Lin Jan In Support Thereof

1  Rather, the agreement will allow the Taiwanese courts to proceed directly to

2  determining compensatory damages. *See id.*, ¶ 8.

3        Second, the hypothetical possibility that plaintiffs would want to mount a full

4  liability trial in a foreign forum despite the fact that defendants have agreed not to

5  contest the issue does not weaken defendants' position with respect to *forum non*

6  *conveniens*. No cases cited by plaintiffs suggest that a plaintiff's disregard of a

7  defendant's willingness not to contest an issue can somehow be counted against the

8  *defendant* for purposes of the private interest factors. Even if the foreign forum

9  would allow plaintiffs to disregard defendants' no-contest agreement (and even if

10  plaintiffs would in fact choose to do so), that would be an inconvenience of the

11  plaintiffs' own making, not a factor requiring this Court to retain these cases.

12        Third, plaintiffs' analysis of U.S. authority on admissibility is flawed. The

13  vast majority of the cases cited by plaintiffs are criminal cases, and the courts'

14  analyses of these issues are informed by concerns unique to the criminal context.[11]

15  *See Old Chief v. United States*, 519 U.S. 172, 188 (1997) ("Thus, the prosecution

16  may fairly seek to place its evidence before the jurors, as much to tell a story of

17  guiltiness as to support an inference of guilt, to convince the jurors that a guilty

18  verdict would be morally reasonable as much as to point to the discrete elements of

19  a defendant's legal fault."). In criminal cases, all elements of an offense build

20  towards an up-or-down guilty verdict. In the civil context, however, liability and

21  compensatory damages are discrete issues and, indeed, are often dealt with in

22  separate trials. *See, e.g., Koirala v. Thai Airways Int'l, Ltd.*, 126 F.3d 1205, 1208

23

24  _____

25      [11] For the reasons stated in Boeing's reply brief, the only civil case cited by
plaintiffs is inapposite. Not only did the defendant in *Briggs v. Dalkon Shield*

26  *Claimants Trust*, 174 F.R.D. 369 (D. Md. 1997), strongly dispute causation, but it

27  also retained a number of affirmative defenses – such as assumption of risk and
discharge of duty to warn – that could have eliminated the defendants' liability

28  entirely. *Id.* at 371, 375.

[LA041550.064] 01038-4117-000000       **15**      *Case No. 03-3635 MMM (RNBx)*

Boeing's Sur-Reply in Support of Motion to Dismiss on *Forum Non Conveniens* Grounds; Supplemental
Declarations of Melora M. Garrison and Sheng-Lin Jan In Support Thereof

(9th Cir. 1997) (bifurcated liability and damages phases in air crash case). Thus, there is no danger that the agreement not to contest liability would "rob the evidence of much of its fair and legitimate weight," *Old Chief*, 519 U.S. at 187 (quoting *Parr v. United States*, 255 F.2d 86, 88 (5th Cir. 1958)), because liability issues are irrelevant to compensatory damages. No "evidence" of liability is required where the sole issue needed to arrive at the ultimate conclusion is compensatory damages.

Finally, plaintiffs allege that they should be permitted to impose upon this Court's resources solely to "search for the truth," allegedly to reveal that Boeing was at "fault for the unsafe design, repair and post-sale support of its airplane." *See* Response at 16:14-17:5. The cause of the accident, however, is already the subject of an intense, expensive, and long-running official investigation led by the Taiwan ASC. Moreover, as discussed in Boeing's moving brief, the ASC's focus on the cause of the CI611 crash is on China Airlines, *not* Boeing. The accident investigation is focused on a structural repair China Airlines performed in Taiwan after a tailstrike accident in 1980. *See* Boeing's Mot. at 5:11-6:2. Plaintiffs do not dispute that China Airlines is the focus of the ASC investigation. Thus, the ASC investigation will reveal whether Boeing was "at fault," and plaintiffs do not need to present a time-consuming and expensive liability trial. This cannot be plaintiffs' true aim, however, given that if they were successful in proving liability their only reward would be the recovery of compensatory damages – something that defendants' stipulations already provide.

DATED: June 14, 2004

PERKINS COIE LLP

By _____
MELORA M. GARRISON
Attorneys for Defendant
THE BOEING COMPANY

[LA041550.064] 01038-4117-000000                    16                    *Case No. 03-3635 MMM (RNBx)*

Boeing's Sur-Reply in Support of Motion to Dismiss on *Forum Non Conveniens* Grounds; Supplemental
Declarations of Melora M. Garrison and Sheng-Lin Jan In Support Thereof

# SUPPLEMENTAL DECLARATION OF
## PROFESSOR SHENG-LIN JAN

I, Sheng-Lin Jan, declare as follows:

1. I have provided my qualifications in my prior declaration dated April 5, 2004. Except as otherwise stated, I have personal knowledge of the facts set forth herein, and if called upon to do so, I could and would testify thereto based on such personal knowledge.

2. I have reviewed the notification that China Airlines and Boeing submitted to the Court regarding the defendants' stipulations to fully compensate plaintiffs in either Taiwan or the foreign country of their decedents' domicile if the Court dismisses plaintiffs' claims on *forum non conveniens* grounds. I am informed that this notification was filed with the Court on May 7, 2004. It is my opinion that the stipulations by China Airlines and Boeing not to contest liability for the aircraft accident on May 25, 2002, near Penghu Islands, Taiwan, constitutes an act of "debt acknowledgement" that is valid and enforceable under Taiwanese law.

3. The notion of debt acknowledgement is that a debtor acknowledges certain debt to a creditor, and the creditor, thereby enabling the creditor to exercise the rights stemming therefrom.

4. According to Paragraph 1, Subparagraph 2 of Article 129 of Taiwan's Civil Code, the extinctive prescription (a.k.a. statute of limitation) will be interrupted by the debtor's acknowledgement of the debt. To effectuate the interruption of extinctive prescription, the acknowledgement of the debt as such can be rendered unilaterally by the debtor without requiring either the creditor's consent or any qualified causes for the acknowledgment (*see, e.g., Supreme Court 1961 Tai-Shan-Tze No. 2868 Civil Precedent; 1937 Eh-Shan-Tze No. 32 Civil Precedent*). Such acknowledgement of debt shall be enforceable upon the debtor even after the expiration of extinctive prescription (*see, e.g., Supreme Court 1961 Tai-Shan-Tze*

Boeing's Sur-Reply in Support of Motion to Dismiss on *Forum Non Conveniens* Grounds; Supplemental
Declarations of Melora M. Garrison and Sheng-Lin Jan In Support Thereof

*No. 2868 Civil Precedent, 1960 Tai-Shan-Tze 2620 Civil Precedent; 2003 Tai-Shan-Tze 1851 Civil Judgment*).

5.      Therefore, acknowledgement of debt is a juristic act enabling certain effects as expressly provided under Taiwan Civil Code.

6.      For example, in *Supreme Court 1999 Tai-Shan-Tze No. 1189 Civil Judgment*, the defendant was found to have signed a declaration, expressing the intention to transfer 30% of the rights and interests of a piece of land in its name to the plaintiff, without stipulating any cause of action.  The Supreme Court affirmed the holdings of the High Court, maintaining "The enforceability of the acknowledgement of debt stated in the declaration is hereby recognized.  The purpose of the parties' entrance into a debt acknowledgement agreement is to detach the causes of action, with possible defenses derived from the causes, from the enforceability of the acknowledged debt. ...Therefore, the plaintiff's claim based on the acknowledgement of debt in the declaration should be granted."  [*See, also, Supreme Court 2003 Tai-Shan-Tze 1540 Civil Judgment.*]

7.      According to the principle of autonomy of private law, the debtor may opt to acknowledge the existence as well as the amount of the debt.  In the same vein, the debtor may opt to acknowledge the existence of the debt while disputing the amount thereof.  (*See Taipei District Court 2000 Shu-Tze No. 1709 Civil Judgment.*)

8.      In conclusion, I am of the opinion that if Boeing does not contest its liability for the aircraft accident on May 25, 2002 near Penghu Islands, but disputes the amount of damages, then under Taiwanese law such an acknowledgement of debt is valid and enforceable.  The exact amount of compensation to each plaintiff will then be decided by the court according to the relevant laws (e.g. Articles 192 and 194 of the Civil Code).

[LA041550.064] 01038-4117-000000                    18                    Case No. 03-3635 MMM (RNBx)

Boeing's Sur-Reply in Support of Motion to Dismiss on *Forum Non Conveniens* Grounds; Supplemental Declarations of Melora M. Garrison and Sheng-Lin Jan In Support Thereof

9. According to Article 286 of the Taiwan Civil Procedure Code, courts in Taiwan are not required to allow a party to present evidence on issues that the opposing party has agreed not to dispute.

10. Taiwan's Consumer Protection Law ("CPL") does not apply retroactively. Article 42 of the CPL's Enforcement Rules provides: "The law does not apply to goods already circulated into the market or services already provided prior to the implementation of the Law." The CPL was implemented on January 13, 1994. I am informed that the subject aircraft was delivered by Boeing in 1979. Therefore, the CPL does not apply to Boeing's design and manufacture of the aircraft. The CPL also does not apply to any conduct by Boeing prior to January 13, 1994.

11. Article 10 of the CPL governs a manufacturer's post-sale duty to warn. Article 10 does not contain an express cause of action that creates liability to consumers on a post-sale duty to warn theory. In this way, Article 10 is different from other provisions of the CPL. Article 7 (which governs designers, producers, and manufacturers of goods or providers of services), Article 8 (which governs distributors of goods and services), and Article 9 (which governs importers of goods and services) each expressly state that they create liability to consumers, if the goods or services are defective.

12. To date, no case in Taiwan has allowed a private claim for punitive damages under the CPL for a violation of Article 10.

13. When a manufacturer recommends that customers follow certain procedures for repairing a product, neither general tort law nor the CPL requires the manufacturer to recommend inspections to confirm that the repair recommendations were followed.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

[LA041550.064] 01038-4117-000000          19          *Case No. 03-3635 MMM (RNBx)*

Boeing's Sur-Reply in Support of Motion to Dismiss on *Forum Non Conveniens* Grounds; Supplemental Declarations of Melora M. Garrison and Sheng-Lin Jan In Support Thereof

SCANNED

Executed on June *13*, 2004 at Taipei, Taiwan.

Professor Sheng-Lin Jan

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**20**

061404/00003[LA041820070]                                                    *Case No. 03-3635 MMM (RNBx)*
Boeing's Sur-Reply in Support of Motion to Dismiss on *Forum Non Conveniens* Grounds; Supplemental
Declarations of Melora M. Garrison and Sheng-Lin Jan In Support Thereof

# SUPPLEMENTAL DECLARATION OF
# MELORA M. GARRISON

I, Melora M. Garrison, declare as follows:

1.     I am an attorney licensed to practice law in the State of California and before this Court. I am an associate at the law firm of Perkins Coie LLP, attorneys of record for Defendant The Boeing Company ("Boeing") in this lawsuit. I have personal knowledge of the facts set forth below except as to those matters stated on information and belief, and as to those matters, I believe them to be true. If called upon to testify, I could and would testify as to the matters set forth herein.

2.     Plaintiffs did not file or serve two of the cases mentioned in their briefs – *Guh, et al. v. China Airlines, Ltd. et al.*, Case No. CV04-2701 DSF (MCx) and *Lee, et al. v. China Airlines, Ltd.*, et al., Case No. CV04-4051 JSL (MCx) – until after defendants had filed their motions to dismiss on *forum non conveniens* grounds, and after the *forum non conveniens* discovery cut-off. These cases involve four decedents: Ya-Kuang Guh-Jin, Po-Wen Guh, Jyh-Hei Guh, and Cheng-Chien Lee. On March 10, 2004, counsel for Boeing sent a letter to plaintiffs' counsel requesting expedited discovery responses in all new actions filed before the Court issues its ruling on the motions to dismiss. On June 8, 2004, counsel for Boeing sent a letter to plaintiffs' counsel reiterating this request with respect to the two actions filed after the motions to dismiss. Attached hereto as **Exhibit A** are true and correct copies of the March 10 and June 8 letters. Plaintiffs have not provided discovery responses with respect to the *Guh* and *Lee* cases.

3.     Attached hereto as **Exhibit B** are true and correct copies of relevant portions of the transcript of the deposition of plaintiff Isaac Hung, recorded on March 23, 2004.

4.     Attached hereto as **Exhibit C** are true and correct copies of relevant portions of the transcript of the deposition of Liang-Kuang Shih, recorded on April 14, 2004.

[LA041550.064] 01038-4117-000000                21                Case No. 03-3635 MMM (RNBx)
Boeing's Sur-Reply in Support of Motion to Dismiss on *Forum Non Conveniens* Grounds; Supplemental
Declarations of Melora M. Garrison and Sheng-Lin Jan In Support Thereof

5.     Attached hereto as **Exhibit D** are true and correct copies of relevant portions of the transcript of the deposition of Ko-Chung Lung, recorded on April 15, 2004.

6.     Attached hereto as **Exhibit E** are true and correct copies of relevant portions of the transcript of the deposition of Helen Chu Fang-Ku Chen, recorded on March 26, 2004.

7.     Attached hereto as **Exhibit F** are true and correct copies of relevant portions of the transcript of the deposition of William Wu, recorded on March 19, 2004.

8.     Attached hereto as **Exhibit G** are true and correct copies of relevant portions of Plaintiff Isaac Hung's Responses and Supplemental Responses to Defendants' Joint First Set of Requests for Admission, Interrogatories, and Requests for Production to Plaintiffs Regarding Forum Non Conveniens Issues.

9.     Attached hereto as **Exhibit H** are true and correct copies of relevant portions of the Responses of Plaintiffs David Shih and Kuei-Hsien Shih to Defendants' Joint First Set of Requests for Admission, Interrogatories, and Requests for Production to Plaintiffs Regarding Forum Non Conveniens Issues.

10.     Attached hereto as **Exhibit I** are true and correct copies of relevant portions of the Responses of Plaintiffs Chih-Ching Chiu, Shao-Chi Lung, Yu-Chieh Lung, Ko-Chung Lung, and Amy Peng to Defendants' Joint First Set of Requests for Admission, Interrogatories, and Requests for Production to Plaintiffs Regarding Forum Non Conveniens Issues.

11.     Attached hereto as **Exhibit J** are true and correct copies of relevant portions of the Supplemental Responses of Plaintiffs Shen, Yao-Lung and Shen Yang, Su-Chen to Defendants' Joint First Set of Requests for Admission, Interrogatories, and Requests for Production to Plaintiffs Regarding Forum Non Conveniens Issues.

12.     Attached hereto as **Exhibit K** are true and correct copies of relevant portions of Plaintiffs' Responses and Supplemental Responses to Defendants' First Set of Interrogatories Regarding Forum Non Conveniens Issues, relating to decedent Ying Yuchih.

13.     Attached hereto as **Exhibit L** are true and correct copies of relevant portions of Plaintiffs' Responses to Defendants' First Set of Interrogatories Regarding Forum Non Conveniens Issues, relating to decedent Chun Ruey Wu.

14.     All financial and tax records produced by Plaintiffs Isaac Hung (Case No. CV03-3635), David Shih, et al. (Case No. CV03-5025), and Chung-Ping Yu, et al. (Case No. 03-5937) are in Chinese.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed this 14th day of June, 2004, at Santa Monica, California.

Melora M. Garrison

[LA041550 064] 01038-4117-000000

Boeing's Sur-Reply in Support of Motion to Dismiss on *Forum Non Conveniens* Grounds; Supplemental Declarations of Melora M. Garrison and Sheng-Lin Jan In Support Thereof

SCANNED

**EXHIBIT A**

Perkins
Coie
LLP

1620 26th Street
Sixth Floor, South Tower
Santa Monica, CA 90404-4013
PHONE: 310.788.9900
FAX: 310.788.3399
www.perkinscoie.com

March 10, 2004

**VIA FACSIMILE & U.S. MAIL**

Steven D. Archer, Esq.
ROBINS, KAPLAN, MILLER
  & CIRESI L.L.P.
2049 Century Park East, Suite 3700
Los Angeles, CA  90067-3211

Re:   *Li-Mei Shih, et al. v. China Airlines, Ltd., et al.*, Case No. BC310707
      *Yu-Hua Yang, et al. v. China Airlines, Ltd., et al.*, Case No. BC310644
      *Hsin-Chan Lu, et al. v. China Airlines, Ltd., et al.*, Case No. BC310705

Dear Steve:

Your office has recently served the three new above-referenced actions arising out of the China Airlines Flight 611 crash. With the forum non conveniens briefing beginning in less than a month, we wanted to try to reach some accommodation with you to expedite FNC-related discovery in these new actions, such that the facts of these cases could, as necessary, be before the Court when the FNC motions are heard in May. To this end, we will shortly be serving in these cases the same discovery we served in the other cases, and we have a two-faceted proposal for the response dates:

1. If any of the plaintiffs or decedents involved in any of the three new cases has a claimed U.S. connection, we would like to receive responses as to each such plaintiff or decedent to all discovery that defendants have heretofore served by March 24, 2004.

2. For all plaintiffs and decedents without a contended U.S. connection, we would not need responses before filing our motion, and could wait the standard 30 days for responses.

If you or other plaintiffs' counsel file any other new actions before the Court issues an FNC decision, we would likewise expect and request expedited FNC-related discovery responses in those cases as well, with deadlines dictated by the briefing schedule.

[01038-4117/LA040700.053]

**24**

ANCHORAGE · BEIJING · BELLEVUE · BOISE · CHICAGO · DENVER · HONG KONG · LOS ANGELES
MENLO PARK · OLYMPIA · PORTLAND · SAN FRANCISCO · SEATTLE · SPOKANE · WASHINGTON, D.C.

Perkins Coie LLP (Perkins Coie LLC in Illinois)

March 10, 2004
Page 2

  Please contact me or Tom McLaughlin when you are prepared to discuss this matter.

Very truly yours,

Ronald A. McIntire

cc:  All Counsel

1

**Service List**

2

| | |
|---|---|
| **Attorneys for Certain Plaintiffs:** | **Attorneys for Certain Plaintiffs:** |

3

4  Stuart R. Fraenkel, Esq.                     John J. Veth, Esq.
   Gretchen M. Nelson, Esq.                     Douglas W. Schroeder, Esq.

5  KREINDLER & KREINDLER LLP                    SPEISER KRAUSE
   707 Wilshire Boulevard, Suite 5070           One Park Plaza, Suite 470

6  Los Angeles, CA 90017                        Irvine, CA 92614
   Tel: (213) 622-6469                          Tel: (949) 553-1421

7  Fax: (213) 622-6019                          Fax: (949) 553-1346

8  Brian J. Alexander, Esq.                     Charles Herrmann, Esq.

9  Francis G. Fleming, Esq.                     HERRMAN & ASSOCIATES
   KREINDLER & KREINDLER, LLP                   1535 Tacoma Avenue, South

10 100 Park Avenue                              Tacoma, WA 98402
   New York, NY 10017                           Tel: (253) 627-8142

11 Tel: (212) 687-8181                          Fax: (253) 627-1835
   Fax: (212) 972-9432

12

13 **Attorneys for Certain Plaintiffs:**       **Attorneys for China Airlines:**

14 Michael Y. Lo, Esq.                          Frank Silane, Esq.

15 Law Offices of Michael Y. Lo                 CONDON & FORSYTH
   506 N. Garfield Avenue, Suite 280            1801 Avenue of the Stars, Suite 1450

16 Alhambra, CA 91801                           Los Angeles, CA 90067
   Tel: (626) 289-8838                          Tel: 310-557-2030

17 Fax: (626) 576-2309                          Fax: 310-557-0139

18

19                                              **Attorneys for Certain Plaintiffs:**

20                                              Steven D. Archer, Esq.
                                                ROBINS, KAPLAN, MILLER & CIRESI LLP

21                                              2049 Century Park East, Suite 3700
                                                Los Angeles, CA 90067

22                                              Tel: (310) 552-0130
                                                Fax: (310) 229-5800

23

24                                              Bruce A. Finzen, Esq.
                                                ROBINS KAPLAN MILLER & CIRESI LLP

25                                              1801 K Street, N.W., Suite 1200
                                                Washington, DC 20006

26                                              Tel: (202) 775-0725
                                                Fax: (202) 223-8604

27

28                                                         **26**



1620 26th Street
Sixth Floor, South Tower
Santa Monica, CA 90404-4013
PHONE: 310.788.9900
FAX: 310.788.3399
www.perkinscoie.com

June 8, 2004

**VIA FACSIMILE & U.S. MAIL**

Steven D. Archer, Esq.
ROBINS, KAPLAN, MILLER
  & CIRESI L.L.P.
2049 Century Park East, Suite 3700
Los Angeles, CA 90067-3211

Stuart R. Fraenkel, Esq.
KREINDLER & KREINDLER LLP
707 Wilshire Boulevard, Suite 5070
Los Angeles, CA 90017

> **Re:** *In Re Air Crash Over the Taiwan Straits on May 25, 2002*
> *Lee, et al. v. China Airlines, Ltd., et al.*
>     **Case No. CV04-4051 JSL (MCx)**
> *Guh, et al. v. China Airlines, Ltd., et al.*
>     **Case No. CV04-2701 DSF (MCx)**

Dear Counsel:

In light of the fact that the above-entitled actions were filed after Defendants filed their motions to dismiss on *forum non conveniens* grounds, and in light of Plaintiffs' contention that both cases involve U.S. citizens and residents, we request that Plaintiffs in these two cases provide responses to Defendants' discovery requests by this Friday, June 11. As you know, Defendants' discovery requests are limited to *forum non conveniens* issues and include (1) Defendants' Joint First Set of Requests for Admission, Interrogatories, and Requests for Production, and (2) Defendants' Second Set of Interrogatories. In our March 10, 2004 letter to Mr. Archer, we noted: "If you or other plaintiffs' counsel file any other new actions before the Court issues an FNC decision, we would likewise expect and request expedited FNC-related discovery responses in those cases as well, with deadlines dictated by the briefing schedule." Such expedited discovery responses are particularly merited in these two cases, as Plaintiffs rely on thesM cases to support the arguments in their opposition to Defendants' motion and in their response to Defendants' replies.

**27**

[01038-4117/LA041600.037]

ANCHORAGE · BEIJING · BELLEVUE · BOISE · CHICAGO · DENVER · HONG KONG · LOS ANGELES
MENLO PARK · OLYMPIA · PORTLAND · SAN FRANCISCO · SEATTLE · WASHINGTON, D.C.
Perkins Coie LLP and Affiliates

June 8, 2004
Page 2

Thank you for your attention to this matter.

Very truly yours,

Melora M. Garrison


cc:     Thomas J. McLaughlin, Esq.
        Ronald A. McIntire, Esq.
        All counsel (see attached service list)

Service List

**Attorneys for Certain Plaintiffs:**

Stuart R. Fraenkel, Esq.
Gretchen M. Nelson, Esq.
KREINDLER & KREINDLER
707 Wilshire Boulevard
          Suite 5070
Los Angeles, CA 90017

Tel:   (213) 622-6469
Fax:   (213) 622-6019

Brian J. Alexander, Esq.
Francis G. Fleming, Esq.
KREINDLER & KREINDLER
100 Park Avenue
New York, NY 10017

Tel:   (212) 687-8181
Fax:   (212) 972-9432

Michael Y. Lo, Esq.
Law Offices of Michael Y. Lo
506 N. Garfield Avenue
          Suite 280
Alhambra, CA 91801

Tel:   (626) 289-8838
Fax:   (626) 576-2309

Steven D. Archer, Esq.
ROBINS, KAPLAN, MILLER
          & CIRESI LLP
2049 Century Park East
          Suite 3700
Los Angeles, CA 90067

Tel:   (310) 552-0130
Fax:   (310) 229-5800

Bruce A. Finzen, Esq.
ROBINS KAPLAN MILLER
          & CIRESI
1801 K Street, N.W.
          Suite 1200
Washington, DC 20006

Tel:   (202) 775-0725
Fax:   (202) 223-8604

**Attorneys for Certain Plaintiffs:**

John J. Veth, Esq.
Douglas W. Schroeder, Esq.
SPEISER KRAUSE
One Park Plaza
          Suite 470
Irvine, CA 92614

Tel:   (949) 553-1421
Fax:   (949) 553-1346

Charles Herrmann, Esq.
HERRMAN & ASSOCIATES
1535 Tacoma Avenue, South
Tacoma, WA 98402

Tel:   (253) 627-8142
Fax:   (253) 627-1835

**Attorneys for China Airlines:**

Frank Silane, Esq.
CONDON & FORSYTH
1901 Avenue of the Stars
          Suite 850
Los Angeles, CA 90067

Tel:   310-557-2030
Fax:   310-557-0139

**29**

SCANNED

**EXHIBIT  B**

1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3

4

5    IN RE AIR CRASH DISASTER        )
     OVER THE STRAITS OF TAIWAN,     )
6    ON MAY 25, 2002                 )
                                     )
     _____ )
7    ISAAC HUNG, individually        )
     and as son and lawful heir      )
8    of JOHNSON K.F. HUNG and        )
     WEI CHIN HUNG WU, deceased,     )
9                                    )
              Plaintiff,             )
10                                   )
          vs.                        )   No. CV-03-3635
11                                   )
     CHINA AIRLINES, LTD., a         )
12   corporation; THE BOEING         )
     COMPANY, a corporation;         )
13   and DOES 1 through 50,          )
     exclusive,                      )
14                                   )
              Defendants.            )
15   _____

16

17       Deposition of ISAAC HUNG, taken on behalf of

18   Defendant CHINA AIRLINES, LTD., at 1801 Avenue of the

19   Stars, Suite 1450, Los Angeles, California 90067, at

20   10:05 a.m., Tuesday, March 23, 2004, before

21   Lawrence Schumacher, CSR No. 1464, pursuant to Notice.

22

23

24   Reported by:  LAWRENCE SCHUMACHER, CSR No. 1464

25   Job No.:      04-26186
                              30

                                                          1

1    Q.    Do you know approximately what age you were when

2    you first saw the document?

3    A.    I can't remember.

4    Q.    Were you in your teens?

5    A.    Honestly, I can't --

6    Q.    Okay.  That's fine.

7    A.    -- I can't remember.

8    Q.    Were you still living at home?

9    A.    When?

10           MR. LAZENBY:  Strike that.

11    Q.    Was it before you left Taiwan to move to the

12    United States?

13    A.    That I have seen this document?

14    Q.    The first time that you saw that document.

15    A.    I really cannot remember.

16    Q.    When was the first time that you became aware of

17    any documents or any indication that you were adopted?

18    A.    Actually, I was told by my father that there was

19    an adoption procedure done before I left for the

20    United States.

21    Q.    So before 1973, you were told by your father

22    that an adoption procedure had taken place that involved

23    you.

24          Is that correct?

25    A.    Yes.  In order for me to come to the States.

31

15

SCANNED

1    Q.   Does your last statement indicate that the

2  adoption procedure took place so that you could move to

3  the United States?

4    A.   That's right.

5    Q.   Is that correct?

6    A.   Correct.

7    Q.   Can you elaborate a little more in terms of why

8  this adoption procedure had to take place or why you were

9  told this adoption procedure had to take place in order

10  for you to move to the United States.

11    A.   My understanding at that time was there was,

12  No. 1, a draft -- military draft requirement.  In order

13  to leave Taiwan before the age of 16, you must have a

14  legitimate reason to leave the country.  At that time my

15  father chose to arrange this adoption with -- with this

16  gentleman who is oversee Chinese so that I would have a

17  legitimate reason to leave the country and obtain the

18  passport.  And that was the reason for the adoption.

19    Q.   Was the primary -- is it your understanding that

20  the primary reason was to avoid the military draft or to

21  move to the United States?

22    A.   It's to move to the United States.

23    Q.   Do you know if those adoption proceeding took

24  place under Taiwanese law?

25    MR. LO:   Objection --

32                                                      16

1          THE WITNESS:  I'm not --

2          MR. LO:  -- calling for illegal conclusion from

3    the witness, which he's incapable of answering.

4          MR. LAZENBY:  Withdraw the question.

5     Q.    Do you know if those adoption proceeding took

6    place in Taiwan?

7          MR. LO:  I would object again for using the term

8    "adoption process."  We don't know whether that in fact

9    took place, and the -- the witness testified that he

10   believed there's some process taking place.  We do not

11   agree that there was in fact -- we don't know.

12         MR. LAZENBY:  I understand your objection.

13         Withdraw the question.

14    Q.    Based on what you were told about this adoption

15   procedure that you just testified to, is it your

16   understanding that that procedure or any of those

17   procedures -- adoption-related proceedings took place in

18   Taiwan?

19    A.    It -- yes, it did.

20    Q.    Who is -- is it Chang Li Wen that you read from

21   that document?

22    A.    Yes.

23    Q.    Who is he?

24    A.    He -- he was allegedly the adopted father.

25    Q.    Could you spell his name for the record, please.

                          33

                                                17

1    adoption proceeding.

2              Have you done anything?

3       A.    I had consulted with local attorneys in Taiwan

4    regarding the issue.

5       Q.    Do you know the names of these attorneys?

6       A.    Right now I can't -- I cannot remember the

7    names.

8       Q.    They're located in Taiwan?

9       A.    Yes.

10      Q.    Do you recall what was discussed with any of

11   these attorneys?

12             MR. LO:  Objection.  Attorney-client privilege.

13             I instruct the client not to answer.

14   BY MR. LAZENBY:

15      Q.    When did you consult with these attorneys in

16   Taiwan?

17      A.    It was after the -- the plane accident.

18      Q.    What prompted you at that time to consult with

19   attorneys in Taiwan regarding the adoption proceeding?

20      A.    I was told that based on the record in Taiwan I

21   was not a legal heir.

22      Q.    You were told that by who?

23      A.    By the gentleman who at that time was handling

24   my father's affair.

25      Q.    Do you know the name of this gentleman?

1          MR. LO:  We have gone through this proceeding

2    for almost two hours, so it's difficult for me to go back

3    and classify each question whether they're forum

4    non conveniens or not.  Just generally some of the

5    questions went beyond that.

6    BY MR. LAZENBY:

7          Q.    Prior to --

8                Strike that.

9                I believe you said your adoptive parent or

10   purported adoptive parent has passed away.

11               Is that correct?

12         A.    Yes.

13         Q.    Do you know if he was married?

14         A.    No, I don't.

15         Q.    Okay.  At the time of the death of your

16   biological parents, where did they live?

17         A.    They lived actually almost half the time in

18   Taipai, half the time in U.S., with me.

19         Q.    Do you know if they had a residence address at

20   the time of their death, in the United States?

21         A.    It is the same address as mine.

22         Q.    So is it your testimony that approximately out

23   of a 12-month calendar year, half of it would be spent in

24   Taipai and half of it would be spent in the

25   United States?

                              35

                                                              44

1    Q.    Your mother, at the time of her death, was an

2    employee of your company?

3    A.    Correct.

4    Q.    Where is your company based?

5    A.    In San Marino, California.

6    Q.    Is that the only location they have?

7    A.    Yes.

8    Q.    Do they have offices in Taiwan?

9    A.    No.

10   Q.    To they do business in Taiwan?

11   A.    No.

12   Q.    You said your father was retired at the time of

13   his death.

14         But he was involved in real estate --

15   A.    Yes.

16   Q.    -- is that correct?

17         How was he involved in real estate at the time

18   of his death?

19   A.    He had land holdings or land developments, as

20   well as some office -- office space ownership.

21   Q.    Where was the office space ownership that he

22   had?

23   A.    In Taipai.

24   Q.    Where was the land development business that he

25   had?

**36**

1      A.    In Taipai.

2      Q.    Did he own land in Taipai?

3      A.    I believe so, yes.

4      Q.    At the time of his death?

5      A.    Yes.

6      Q.    Did he own land here in the United States at the

7   time of his death?

8      A.    He has equity interest, but no legal ownership.

9      Q.    You said he has equity interest in land in the

10   United States at the time of his death?

11      A.    Right.   Through me.

12      Q.    Any other equity interest in the United States

13   at the time of his death, in land?

14      A.    In land?  Well, actually, I referred equity

15   interest both in land and stocks.

16      Q.    Just so we have a clear record, did your father

17   at the time of his death have equity interest in either

18   land or stock or other in the United States?

19      A.    Yes.

20      Q.    And what was that?

21      A.    (No audible response.)

22      Q.    What was that land equity interest?

23      A.    Do you need the specific description --

24      Q.    Where was the land located?

25      A.    In California.

                                    37

                                                              48

1    they ever have an apartment or own a primary residence in

2    the United States, other than staying with you or with

3    your siblings?

4        A.    For a brief time period they did own a house.

5        Q.    Do you know approximately what year or years

6    that was?

7        A.    I think early '80s.

8        Q.    Do you know approximately how long they owned

9    this house?

10       A.    About five years.

11       Q.    Other than that house that they owned in the

12   early '80s for a five-year period, do you know if they

13   owned any other residence that they lived in in the

14   United States?

15       A.    They lived with me and they do have equity

16   interest in the real estate of mine, if that is what you

17   refer to as ownership.

18       Q.    Other than that.

19       A.    Other than that, no.

20       Q.    Other than that and other than the place that

21   they owned for a five-year period in the '80s, did they

22   have any other residence that they -- where they stayed

23   in the United States?

24       A.    No.

25       Q.    Other than the equity interest in the property

                                    **38**

                                                              53

1    A.    Can you clarify what documents?

2    Q.    That's what I'm asking you.

3          Did you review or read any documents to prepare

4    for your deposition today?

5    A.    Only this one.

6    Q.    The Notice of Deposition, for the record.

7    A.    Yes.

8    Q.    Any other document?

9    A.    No.

10   Q.    Did you have any documents read to you in

11   preparing for your deposition today?

12   A.    No.

13   Q.    Okay.  You testified earlier about Mr. Hsu.

14         Is that S H U?

15   A.    I believe it's H S U.

16   Q.    Oh, I'm sorry.

17         And Mr. Hsu, I believe you testified,

18   voluntarily took some lead in regard to your father's

19   affairs after his death.

20         Is that correct?

21   A.    Yes.

22   Q.    And I believe you testified that at some point

23   Mr. Hsu informed you that because of this adoption

24   proceeding, you were not a legal heir.  That's what he

25   told you.

39

1          Is that correct?

2          MR. LO:  Objection.  It's calling for

3  speculation on the part of Mr. Hsu, and also -- well,

4  that's it.

5          MR. LAZENBY:  Okay.

6    Q.   Is that what he told you?

7    A.   He told me it's based on -- in fact, I believe

8  this was the same document that he was able to retrieve

9  from the government agencies and indicating that there

10  was an adoption record.  Based on that document, he

11  assumed that -- I would think he would assume that was

12  the case of -- yeah.

13    Q.   And that's what he told you?

14    A.   Yes.

15          MR. LAZENBY:  For the record, the witness was

16  referring to the document in Chinese, which I believe is

17  Defendant's Exhibit B.

18          MR. LO:  Was that A or B?

19          MR. LAZENBY:  It's B.

20    Q.   When Mr. Hsu told you that, did you do anything

21  to determine whether in fact you were a legal heir

22  entitled to recover part of your father's estate?

23    A.   I -- I never thought that I was adopted,

24  therefore, I have no reason to do or believe that I have

25  to do anything.

**40**

1    indicate that -- one way or the other whether or not you

2    will be entitled to recover part of your father's estate?

3         A.   No.

4         Q.   Where is your father's -- you talked about

5    proceedings that have to take place so that your father's

6    estate can be split up among his legal heirs.

7              Is that correct?  You said that --

8         A.   Yeah.

9         Q.   Are these proceedings taking place in Taiwan?

10        A.   They should, yes.

11        Q.   Are you aware of any proceedings taking place in

12   the United States regarding your father's estate?

13        A.   Not that I'm aware of.

14             MR. LAZENBY:   I'm going to mark the next

15   exhibit.

16        Q.   I'm going to hand you what we'll mark as

17   Defendant's Exhibit C.

18             For the record, they are Plaintiff Isaac Hung's

19   Responses to Defendant's Joint First Set of Requests for

20   Admission, Interrogatories, and Requests for Production

21   to Plaintiffs Regarding Forum Non Conveniens Issues.

22             I'm going to ask you first, have you seen that

23   document before?

24        A.   Yes.

25        Q.   I'm going to direct your attention to the fourth

**41**

1    Q.    By blood, marriage or adoption?

2    A.    By blood.

3    Q.    And where does she reside currently?

4    A.    In Los Angeles County.

5    Q.    Is that the sister that you initially moved --

6  lived with when you moved to Los Angeles?

7    A.    No.

8    Q.    Which one?

9    A.    It was first one, Mary Zau.

10   Q.    Okay.  And the last one is Esther Kuo, K U O.

11 And excuse me if -- I apologize if I'm mispronouncing it?

12   A.    That's right.

13   Q.    Is that by your sister?

14   A.    Yes.

15   Q.    Is that by blood, marriage or adoption?

16   A.    By blood.

17   Q.    Where does she currently reside?

18   A.    In Orange County.

19   Q.    Underneath that it says "Taiwan address" and it

20 gives an address.

21         Whose address is that?

22   A.    This was the address of my parents.

23   Q.    Was that their address at the time of these

24 deaths?

25   A.    In Taiwan, yes.

**42**

64

1    Q.    And where does she live?

2    A.    In China.

3    Q.    What was her relationship like with your father?

4    A.    Also annual, annual visits.

5    Q.    The next person is K A-B I A U Hung.

6          Who is that?

7    A.    And that's a brother.

8    Q.    And what was his relationship like with your

9    father at the time of his death?

10   A.    Also annual visits.

11   Q.    What was your relationship like with these

12   individuals, or was it different?

13   A.    I have communication with them.

14   Q.    Regularly?

15   A.    Regularly, yes.

16   Q.    Do you ever discuss your parents' passing with

17   any of these individuals?

18   A.    Yes.

19   Q.    Regularly?

20   A.    In fact, they all came to the funeral.

21   Q.    Where was the funeral?

22   A.    In Taipai.

23   Q.    Have you discussed it with them afterward?

24   A.    In regards to?

25   Q.    Discussed any -- the death generally, the

**43**

67

1    A.   No.

2    Q.   Other than -- I apologize for skipping around

3    now, but I'm trying to wrap this up.

4         Other than the real estate interest and stock

5    interest that your father had at the time of his death,

6    did he have any other sources of income at the time of

7    his death, that you're aware of?

8    A.   No.

9    Q.   What about your mother?

10   A.   I think they're the same --

11   Q.   Okay.

12   A.   -- they're together.

13   Q.   I'm not sure if I clarified this:  Did your

14   parents own a residence in Taiwan?

15   A.   My understanding is that they -- I don't know

16   the ownership under their name.

17        You mean where they lived?

18   Q.   Where they lived in Taiwan.

19   A.   I believe there was some complication as to the

20   ownership, whether it was owned or leased.  I think the

21   land was leased.  House was owned.

22   Q.   But the land was leased?

23   A.   The land was leased.

24   Q.   Do you know if either your mother or your father

25   had a savings account in the United States at the time of

**44**

75

SCANNED

**EXHIBIT C**

1              UNITED STATES DISTRICT COURT

2        FOR THE CENTRAL DISTRICT OF CALIFORNIA

3

4

5·    In Re:                     )

                                 )   Case No.

6     Air Crash over the Taiwan  )   CV 03-05025 MMM (RNBx)

      Straits on May 25, 2002    )

7     _____)

8

9

10

11

12

13        DEPOSITION OF LIANG-KUANG SHIH, taken on behalf of

14    the Defendants, at 1901 Avenue of the Stars, Suite 850,

15    Los Angeles, California, at 6:15 p.m., on Wednesday,

16    April 14, 2004, before KATHRYN L. MAUTZ, CSR No. 11539,

17    RPR, pursuant to Notice.

18

19

20

21

22

23

24    Reported by:   KATHRYN L. MAUTZ, CSR No. 11539, RPR

25    Job No.:       04-26275

**45**

1        A      The United States.

2        Q      You live in the United States?

3        A      At that time.

4        Q      Okay.  Where do you live now?

5        A      Currently I live in Taiwan.

6        Q      All right.  How long have you lived in Taiwan

7    on this occasion, most recently?

8        A      Right after the incident I moved back to

9    Taiwan right around August 2002.

10       Q      Okay.  And what is your address in Taiwan?

11       A      7F, Number 18, Lane -- let me take a look.

12       Q      Is it Lane 23?

13       A      23 Juey-An Street, Taipei, Taiwan.

14       Q      Is that an apartment, or is that a house?

15       A      It's an apartment.

16       Q      Is that an apartment that is privately owned,

17   or is it rented?

18       A      It's privately owned.

19       Q      I am looking in front of -- I have in front of

20   me the answers to written interrogatories that were

21   provided by your family; and one of the addresses that

22   is listed for the plaintiffs in this case is the address

23   that you just gave, and that same address was also

24   listed for the -- for your deceased brother and your

25   deceased niece.

**46**

SCANNED

1              Do you know who presently owns that

2   apartment?

3        A    You mean the 7th Floor, Number 18?

4        Q    7th Floor, Number 18, Lane 23.

5        A    That is owned by my father.

6        Q    Your father.  Okay.  And is -- was that

7   property owned by your father at the time of your

8   brother's death?

9        A    Yes.

10       Q    And do you know approximately how long your

11  father owned that property?

12       A    More than 25 years.

13       Q    Has that been a residence for your father?

14       A    For a long time, yes.

15       Q    Okay.

16       A    When he visits Taiwan or stays in Taiwan.

17       Q    When he stays in Taiwan.  Okay.

18            When -- your father, I take it, was born in

19  Taiwan?

20       A    Yes.

21       Q    And do you know when he moved to -- withdrawn.

22            Did he at some point move to the

23  United States?

24       A    I think around '84.

25       Q    Okay.  Before he moved to the United States,

1    did he own that property at 7F, Number 18, Lane 23?

2         A    I'm sorry?

3         Q    Did he own the property, the 7F, Number 18,

4    Lane 23 property when he moved to the United States?

5         A    He -- yes.  He owned the property a long, long

6    time ago.

7         Q    And he continued to own that property after he

8    moved to the United States?

9         A    Correct.

10        Q    How long did he remain in the United States

11   after he moved to the United States, your father?

12        A    Essentially he probably spreads his time

13   between the United States and Taiwan, so --

14        Q    Go ahead.

15        A    -- I would say considered living in the

16   United States.

17        Q    I'm sorry.  What was the last part of your

18   answer?  I didn't hear that.

19        MR. ARCHER:  Frank, the answer was that Mr. Shih's

20   father basically split time between Taiwan and the

21   United States and continued to own the property, this

22   apartment, throughout that time.

23   BY MR. SILANE:

24        Q    Okay.  Approximately how much time did your

25   father split between Taiwan and the United States?

1    50/50, or was it a different percentage?

2        A    I would say maybe around 50/50.

3        Q    And was that continuously, about that

4    division, between the time he first moved to the

5    United States and continuing each year thereafter?

6        A    Yes.

7        Q    Okay.  Where is your father -- do you know

8    where your father is right now even as we speak?

9        A    He is currently in Taiwan.

10       Q    And how long has he been in Taiwan during this

11   latest stay in Taiwan?

12       A    You mean after the accident?

13       Q    Well, he's in Taiwan today?

14       A    Yes.

15       Q    And how long has he been in Taiwan during this

16   latest visit?

17       A    Oh, he's back from the United States around

18   January, I think.

19       Q    So let me see if I understand correctly.  Are

20   you saying that he came to Taiwan, this visit, in

21   January of this year?

22       A    Yes.

23       Q    And do you remember if that was toward the

24   beginning of January or toward the end of January?

25       A    I cannot recall the exact date.  At that time

1    has said that his relocation was because of the

2    accident.

3         MR. SILANE:  You're correct, and I apologize.

4    BY MR. SILANE:

5         Q    Mr. Shih, I am sorry.  Was your decision to

6    relocate to Taiwan related to the accident?

7         A    I would say many, yes.

8         Q    Now, I don't want to become involved in your

9    personal affairs, and that would go beyond the scope of

10   what we're here to do, but I need to explore this a bit

11   to see if there were particular business interests or

12   family interests which were connected to Taiwan that

13   required you to be there.  So I will ask you -- again, I

14   don't want to get involved in your personal affairs, but

15   was your decision to relocate to Taiwan based on some

16   family need that you needed to be in Taiwan?

17        A    Many reasons.  I decided to switch to Taiwan

18   to help my parents, to close my brother's affairs, his

19   affairs in Taiwan, and because my parents after that

20   needed to stay longer in Taiwan for their old friends

21   and supporting them, and they need to process my

22   brother's leftovers.

23        Q    So if I understand correctly, at least part of

24   the reason that you went was to assist your parents in

25   handling your brother's affairs in Taiwan?

Case 2:03-cv-03635-MMM-RN Document 76 Filed 06/15/04 Page 57 of 137 Page ID #:158.

4/15/04 SHIH, Liang-Kuang V.1

1       A    Correct.

2       Q    Okay.  Now, the accident was not quite two

3   years ago.  Have you been involved in handling your

4   brother's affairs even up until the present time, or is

5   that mostly completed?

6       A    I think both of the -- of them are already

7   completed.

8       Q    Were there any kind of legal proceedings or

9   court proceedings relating to your brother's estate in

10  Taiwan?

11      A    No.

12      Q    Okay.  What kinds of affairs have you had to

13  deal with in dealing with your brother's affairs?

14      A    At that time the funeral, and my brother own a

15. hospital.  We had to sell it.

16      Q    Okay.  Now, he was affiliated with the Hong

17  Lin (phonetic) Hospital; is that correct?

18      A    Hong Lin, yes.

19      Q    Did he own the Hong Lin Hospital?

20      A    Yes.

21      Q    Your brother was born, if I'm correct, in

22  1961; is that right?

23      A    Correct.

24      Q    So he was born in Taiwan?

25      A    Yes.

```
1      Q    And you were born in Taiwan?

2      A    Yes.

3      Q    Okay.  Was your brother educated in Taiwan?

4      A    Yes.

5      Q    And he was a physician; is that correct?

6      A    Yes.

7      Q    Did he go to medical school in Taiwan?

8      A    Yes.

9      Q    And he was licensed in Taiwan?

10     A    Correct.

11     Q    Okay.  Was his medical practice completely --

12   let me rephrase that.

13          Was his medical practice limited to practicing

14   medicine in Taiwan?

15     A    I'm sorry?

16     Q    Did he practice medicine anywhere else but

17   Taiwan?

18     A    Not that I'm aware of.

19     Q    Okay.  Did he have any other business

20   interests in Taiwan that you're aware of?

21     A    You mean other investments or --

22     Q    Yeah.  Did he own any businesses of any kind

23   other than the hospital?

24     A    I don't know.

25     Q    Do you know -- do you know whether his -- am I
```

SCANNED

**EXHIBIT D**

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

In Re:                          )

                                )   Case No.

Air Crash over the Taiwan       )   CV 037603 ABC (CWx)

Straits on May 25, 2002         )

_____)

DEPOSITION OF KO-CHUNG LUNG, taken on behalf of the

Defendants, at 1901 Avenue of the Stars, Suite 850,

Los Angeles, California, at 6:03 p.m., on Thursday,

April 15, 2004, before KATHRYN L. MAUTZ, CSR No. 11539,

RPR, pursuant to Notice.

Reported by:  KATHRYN L. MAUTZ, CSR No. 11539, RPR

Job No.:      04-26284

**53**

4:45 PM                                          1        6

1    Q    Yes?

2    A    Yes.

3    Q    Okay.  I mentioned a moment ago, the court

4   reporter will record everything that we're saying; and

5   eventually you will have a chance to review the

6   testimony, the questions and answers that are given

7   today.  And if you change anything, which you have the

8   right to do, I would have the opportunity to comment on

9   the changes that you made.

10        Do you understand that?

11    A    I understand.

12    Q    Okay.  Is there any reason why we cannot

13   proceed with your deposition?  Are you prepared to

14   proceed, and are you alert and ready to proceed at this

15   time?

16    A    Yes.

17    Q    Okay.  Your full name is Ko-Chung Lung?

18    A    Correct.

19    Q    And what is your present address?

20    A    12 Flower, Number 68, Archer Road, Taipei,

21   Taiwan.

22    Q    And you are a permanent resident of

23   Taipei, Taiwan?

24    A    Yes.

25    Q    And you are a citizen of Taiwan?

**54**

SCANNED

```
 1          A      Yes.

 2          Q      Okay.  Do you have any other residence or

 3   places that you live other than the one that you just

 4   told me about?

 5          A      The United States.

 6          Q      Do you have an address in the

 7   United States?

 8          A      Yes.

 9          Q      Now, the place that you live in Taiwan, is

10   that some place that you own, or is it a place that you

11   rent?

12          A      I own.

13          Q      Okay.  And the place -- do you sometimes

14   visit the United States?

15          A      Say it again, please.

16          Q      Do you sometimes visit the United States?

17          A      Yes.  Quite a lot.

18          Q      Do you have any -- do you own any property

19   in the United States?

20          A      Yes.

21          Q      What do you own in the United States?

22          A      I have a house in San Jose and a house in

23   Las Vegas.

24          Q      And are those houses that you own

25   personally?
```

**55**

```
1    hasn't been there in two years now; is that correct?

2         A     No.  After the crash of my son, she went

3    back to the United States two times within the last two

4    years.

5         Q     All right.  Well, let me make sure my

6    record is clear.  You haven't been in the United States

7    for two years; is that correct?

8         A     Correct.

9         Q     But your wife has been in the

10   United States during the last two years?

11        A     Yes.

12        Q     How many times and how long on each visit

13   within the last two years?

14        A     Two times, one month each time.

15        Q     Thank you.

16              Are you a citizen of the United States,

17   sir?

18        A     Yes.

19        Q     When did you become a citizen?

20        A     2002.

21        Q     And is your wife a citizen?

22        A     Yes.

23        Q     And did she become a citizen at about the

24   same time as you?

25        A     No.  One year earlier.
```

1    Q    One year earlier?

2    A    Two years earlier.

3    Q    So around 2000?

4    A    2000, yes.

5    Q    And the other people that are plaintiffs

6    in the lawsuit, your daughter-in-law and the two

7    children, are they citizens of the United States?

8    A    No.

9    Q    With respect to your son, what was his

10    occupation?

11    A    He worked for a fish market.

12    Q    I'm sorry?

13    A    He's the general manager of a big market

14    at China mainland.

15    Q    Where was the market located?

16    MR. ARCHER:  He said on the China mainland.

17    BY MR. SILANE:

18    Q    Oh, on the China mainland.  Okay.

19    A    Yes.

20    Q    Did he live on the China mainland?

21    A    Yes.

22    Q    At the time of his death, did his wife

23    live with him on the China mainland?

24    A    No.

25    Q    Okay.  Do you know whether he visited the

SCANNED

1    Boeing Company, and I do want to thank you for talking

2    with us today.

3              I just have a couple of follow-up

4    questions.  To make the record clear, Chih-Chih Chiu --

5    I'm sorry.  I think I misstated that.  Chih-Ching Chiu,

6    that was your son's wife; correct?

7         A    Correct.

8         Q    And Shao-Chi Lung was your son's son,

9    correct, the decedent's son?

10        A    Right.

11        Q    I'm sorry.  Let me rephrase that again.

12   Shao-Chi Lung is Che-Ming Lung's son; is that correct?

13        A    Yes.

14        Q    And Yu-Chien Lung is Che-Ming Lung's

15   daughter; is that correct?

16        A    Right.

17        Q    And Amy Peng, in addition to being your

18   wife, is also Che-Ming Lung's mother; is that correct?

19        A    Correct.

20        Q    Okay.  And I think I heard your testimony

21   earlier, but just to clarify the record, is it true that

22   both you and your wife are Taiwan citizens also?

23        A    Yes.

24        Q    Okay.  How long did your son, Che-Ming

25   Lung, work in the PRC on the China mainland?

58

1    A    That's about six months.

2    Q    So from about December 2001 to May 2002?

3    A    Yeah.

4    Q    And what was his address when he was

5    living on the Chinese mainland?

6    A    His address or my address?

7    Q    His address, your son's.

8    A    Actually, I don't know.

9    Q    You don't know?

10    A    Yeah.

11    Q    Did he travel frequently back and forth

12    between the mainland and Taiwan during those six months?

13    A    No.  That's the first time and the last

14    time.

15    Q    Let's see.  Do you know if your son had

16    any bank accounts and, if so, at what banks did he have

17    them?

18    A    He has, but I don't know the name.  But he

19    has got a lot of accounts.

20    Q    Were these accounts located in Taiwan?

21    A    Yes, and one is on the China mainland.

22    Q    So your son's bank accounts were located

23    either in Taiwan or on the China mainland; is that

24    correct?

25    A    Yes.

SCANNED

**EXHIBIT E**

1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3

    IN RE:                                    )

4                                             )

                                              )

5   AIR CRASH OVER THE TAIWAN STRAITS         )

    ON MAY 25, 2002                           )  CV 03-7608MMM

6                                             )  (RNBx)

                                              )

7                                             )

                                              )

8

9

            DEPOSITION OF HELEN CHU FANG-KU CHEN

10               FRIDAY, MARCH 26, 2004

11

12

13

14

15

16

17

18

19

20

21

22

23   FILE NO.  04-26204

24   REPORTED BY:  APRIL R. PRAXMARER, CSR 12437.

25                        **60**

SCANNED

1    BY MR. LAZENBY:

2        Q.    What was his date of birth?

3        A.    1/2/54.

4        Q.    Was he born in Taiwan?

5        A.    Yes.

6        Q.    At the time of his death, what was his primary

7    residence?

8        A.    U.S.A.

9        Q.    Where in the United States?

10       A.    Arcadia, California.

11       Q.    How long did he live at that residence?

12       A.    Approximately seven years.

13       Q.    Do you know if during that seven-year period he

14   had -- he exclusively had a primary residence in

15   Arcadia, California? Withdraw the question.

16             Do you know if during that seven year-period he

17   lived -- if it's just part-time or most of the time or

18   other? Do you know if he had a residence somewhere

19   other than Arcadia?

20       A.    Yes.

21       Q.    Where was this other residence or these other

22   residences?

23       A.    Taiwan.

24       Q.    Do you have the address of that residence in

25   Taiwan or those residences?

**61**

Page 26

1    A.   Yes.

2    Q.   How many different residences were there in

3  Taiwan during that seven-year period?

4    A.   One.

5    Q.   What was the address of that residence?

6    A.   Number 18.

7    MR. ARCHER:  I'm on Page 8 of the supplemental

8  responses.  It is the supplemental response to

9  Interrogatory 4-E, which sets forth two addresses for

10  the decedent, one in Arcadia and one in Taipei.

11    MR. LAZENBY:  Just for the record, it says 2 F,

12  Number 18, Alley 43, Lane 262, Chung-Ho Road, Chung Ho

13  City, Taipei, Taiwan, Republic of China.

14    Q.   Do you know if at the time of his death the

15  decedent maintained this residence address in Taiwan?

16    A.   Both.

17    Q.   So at the time of his death, the decedent had a

18  residence both here in Arcadia and in Taiwan; is that

19  correct?

20    A.   Correct.

21    Q.   The residence in Taiwan, was that an apartment?

22  A house?  A condo.  What kind of residence was it?

23    A.   Apartment.

24    Q.   Did he own that place or he rented?

25    A.   Own.

**62**

Page 27

1    Q.   The residence in Arcadia, is that a house?

2    A.   Yes.

3    Q.   Did he own that house?

4    A.   No.

5    Q.   Was it rented or leased?

6    MR. ARCHER:  Who did he live with there?

7    THE WITNESS:  Sister.

8  BY MR. LAZENBY:

9    Q.   So at the time of his death, the residence that

10  you identified in Arcadia was shared with his sister?

11   A.   Yes.

12   Q.   Okay.

13   MR. ARCHER:  The plaintiffs are his mother and

14  three sisters.  And one of Mrs. Chen's other sisters is

15  the owner of the property in Arcadia, where the brother

16  also lived.

17   MR. LAZENBY:  I'd like to get that from the

18  witness.

19   MR. ARCHER:  I'm only trying to help you.

20   MR. LAZENBY:  I understand that, but the witness

21  has to put that on record.  Also, when you say "other

22  sister," you mean a sister other than plaintiff?

23   MR. ARCHER:  Yes.

24   MR. LAZENBY:  So it's a third sister?

25   MR. ARCHER:  Yes.  There are three sisters and one

1    mother that are the four plaintiffs here.

2    BY MR. LAZENBY:

3        Q.   The residence in Arcadia was owned by the

4    decedent's sister; is that correct?

5        A.   True.

6        Q.   What's the name?

7        A.   Mei Fan, M-e-i, F-a-n, K-u.

8        Q.   And Mei Fan Ku is a plaintiff in this lawsuit;

9    is that correct?

10       A.   Yes.

11       Q.   And Mei Fan Ku owned the residence in Arcadia;

12   is that correct?

13       A.   Correct.

14       Q.   And the decedent lived with her at that

15   residence; correct?

16       A.   Correct.

17       Q.   Do you know if the decedent paid rent to her?

18       MR. ARCHER:   Object as to relevance.  If you know,

19   tell him.

20       THE WITNESS:   I don't know.

21   BY MR. LAZENBY:

22       Q.   Do you know approximately -- withdrawn.

23            At the time of the accident, do you know

24   approximately how much time out of the year the

25   decedent lived or stayed at the Arcadia residence, for

**64**

SCANNED

1   example?

2       A.   Travel back and forth.

3       Q.   And, for example, a month's period of time at

4   the time of the accident, how much of that month would

5   he spend staying at the Arcadia residence?

6       A.   U.S.A., every day there.  In U.S.A. every day

7   live here.

8       Q.   Okay.  At the time of the accident, how much

9   time did the decedent live at the residence that he

10  owned in Taiwan in a year's period?  Say, for example,

11  take 12 months prior to the accident, how much of that

12  time would he stay at the residence in Taiwan?

13      A.   He traveled a lot.

14      Q.   Do you have a rough estimate?  Was it 50/50

15  back and forth?  Was --

16      A.   (Inaudible.)

17      Q.   Do you know?

18      A.   Traveling, you can't -- I mean hard to

19  calculate.

20      Q.   Okay.

21      A.   He's a businessman.  You have to go everywhere.

22  Wherever business there, you have to take care.  It's

23  not really, you know, exactly he fixed some there.

24      Q.   Do you know if he spent most of the time in

25  Taiwan or at the Arcadia residence at the time of the

1    accident?  Was he living most of his time in Arcadia --

2    withdraw the question.

3            At the time of the accident, was the decedent

4    living at the Arcadia residence or at the residence in

5    China most of the time?  Which one did he spend more

6    time in, or was it equal?

7        A.    I don't know.  I don't know.

8        Q.    Do you have an estimate?

9        A.    I can't estimate.

10       Q.    Do you know if the decedent, at the time of the

11   accident, do you know where most of his belongings

12   were?  His clothes, his other personal belongings, were

13   they in Taiwan or were they in Arcadia?

14       A.    Both.

15       Q.    Okay.  They were probably split between the

16   two?

17       A.    Yes.

18       Q.    During the times that he was in Arcadia, do you

19   know if someone else occupied his residence in Taiwan?

20       A.    No.

21       Q.    Was he the only person that lived in the

22   residence in Taiwan?

23       A.    Yes.

24       Q.    At the time of his death, what was his

25   employment?

Page 31

1    A.   Panda Star.

2    Q.   P-a-n-d-a, S-t-a-r?

3    A.   Right.

4    Q.   And what is Panda Star?

5    A.   Business.

6    Q.   What type of business is it?  I'm sorry.

7    A.   Garment business.

8    Q.   Would -- did Panda Star buy and sell garments?

9    A.   Yes.

10   Q.   And was the decedent an employee, or did he own

11   the business?

12   A.   Own.

13   Q.   Did he have other employees?

14   A.   Yes.

15   Q.   Approximately how many employees did he have at

16   the time of the accident?

17   A.   I don't know.

18   MR. ARCHER:  The only point I want to make is we

19   don't want you to guess.  If you have some information,

20   answer the question.  Don't guess.

21   BY MR. LAZENBY:

22   Q.   Was it closer to 10 or closer to 100?

23   A.   I can't guess.

24   Q.   You don't have an estimate?

25   A.   I can't estimate.

67

SCANNED

1    Q.   Does Panda Star have a business address?

2    A.   Yes.

3    Q.   What is the business address of Panda Star?

4         Just for the record, your answers to

5    interrogatories say Taiwan, Republic of China.  Do you

6    have a more specific street address?

7    A.   Just Chinese pronunciation B-a-d-d-e-r -- may

8    be just Chinese pronunciation, Road, Section 2.

9    Q.   Is that the only business address for Panda

10   Star?

11   A.   According to my memory, yes.

12   Q.   Okay.  The employees for Panda Star, where did

13   they live, if you know?

14   A.   I don't know.

15   Q.   Do you know if there were any employees of

16   Panda Star that lived in the United States?

17   A.   I don't know.

18   Q.   Do you know if there were any employees of

19   Panda Star that lived in Taiwan?

20   A.   I don't know.

21   Q.   The decedent's business records related to his

22   business with Panda Star, do you know where he

23   maintained those.  Were they kept in Taiwan?

24   A.   I don't know.

25   Q.   Do you know if he had any business records here

1  evidence as to whether or not the bank in -- Taiwan

2  bank account pays interest.

3      MR. LAZENBY:  That's what I said.

4      MR. ARCHER:  I understand.

5  BY MR. LAZENBY:

6      Q.  The answer is you don't know?

7      A.  I don't know.

8      Q.  Where is your brother's estate currently being

9  administered, do you know?  Your brother's estate?

10      MR. ARCHER:  I think we are one step ahead.  We

11  haven't established there is an estate.

12  BY MR. LAZENBY:

13      Q.  Does your brother have an estate as a result of

14  the accident?

15      A.  Yes.

16      Q.  And where is that estate set up?

17      A.  Taiwan.

18      Q.  Do you know if there's a personal

19  representative or someone who's assigned to administer

20  that estate?

21      A.  Not that I know.

22      Q.  Do you know if that's done through the courts

23  in Taiwan?

24      A.  Maybe.

25      Q.  Okay.  Are there any proceedings taking place

SCANNED

**EXHIBIT F**

1

2   UNITED STATES DISTRICT COURT

3   CENTRAL DISTRICT OF CALIFORNIA

4   ------------------------------------x

    IN RE AIR CRASH DISASTER OVER THE STRAITS

5   OF TAIWAN, ON MAY 25, 2002

    ------------------------------------x

6

    CHUNG-PING YU, et al.,

7                           Plaintiff,

                                    Case No.

8           -against-              CV-03-5937

                                   MMM (RNBx)

9

    CHINA AIRLINES, LTD and THE BOEING COMPANY,

10  and DOES 1 through 100, inclusive,

11                      .       Defendants.

12  ------------------------------------x

13                          March 19, 2004

                            12:45 p.m.

14

15

16      Deposition of WILLIAM WU, taken by

17  Defendants, at the offices of Condon & Forsyth,

18  685 Third Avenue, New York, New York, before

19  Tracy Eckhoff, a Shorthand Reporter and Notary

20  Public within and for the State of New York.

21

22

23

24

25                          **70**

Page 14

WILLIAM WU

1
2    Q.    Before April of 2002, where did your
3  sister live?
4    A.    She lived in Santa Barbara,
5  California.
6    Q.    And how long had she lived there?
7    A.    Since '95.
8    Q.    Did she come over to California at the
9  same time that you and your parents did?
10   A.    Yes.
11   Q.    You told me that was in late 1993?
12   A.    Right.
13   Q.    And so she has been in California
14  since 1993?
15   A.    '95. In California since '93. In
16  Santa Barbara since '95.
17   Q.    Okay.
18         So she lived in --
19   A.    Diamond Bar.
20   Q.    -- Diamond Bar for two years before
21  she moved to Santa Barbara?
22   A.    Yes.
23   Q.    Where did your sister go to school?
24   A.    UC Santa Barbara.
25   Q.    Did she graduate from that school?

Page 15

WILLIAM WU

1
2    A.    I'm not sure.
3    Q.    Do you know how many years she
4  attended it?
5    A.    She started in '95, so she -- I'm not
6  sure how many years she attended that school.
7    Q.    Do you have --
8         MR. HOLLAND:  Strike that.
9    Q.    And you don't know whether she
10  graduated?
11   A.    I don't know for sure.
12   Q.    Between the time that she started
13  college in 1995 and the time that she returned to
14  Taiwan in 2002, did she reside in California
15  continuously for that period of time?
16   A.    Yes.
17   Q.    And what did she do after she left
18  school?
19   A.    In California?
20   Q.    Yes.
21   A.    She was going to school the whole
22  time. I'm not sure when she left school, so I
23  don't -- I don't know the answer to that
24  question.
25   Q.    All right.

Page 16

WILLIAM WU

1
2    So your understanding is that between
3  1995 and when she returned to Taiwan in 2002 she
4  had been in school for that entire --
5    A.    Right.
6    Q.    -- seven-year period?
7    A.    That's my understanding, yes.
8    Q.    And do you have an understanding as to
9  whether she worked at all during that time
10  period?
11   A.    She taught at the Chinese school in
12  Santa Barbara. I don't know if she was paid.
13   Q.    And do you know what the name of the
14  school was?
15   A.    No, I don't.
16   Q.    Would you know who her superior or her
17  supervisor was?
18   A.    No, I don't.
19   Q.    Do you know whether your sister has a
20  U.S. green card?
21   A.    My sister is a U.S. citizen.
22   Q.    She's also a U.S. citizen?
23   A.    Yes.
24   Q.    When did she become a U.S. citizen?
25   A.    I'm not sure.

Page 17

WILLIAM WU

1
2    Q.    Before she was a U.S. citizen, did she
3  have a green card?
4    A.    Yes.
5    Q.    Do you know if your sister owned a
6  motor vehicle in California?
7    A.    No.
8    Q.    I'm sorry. It was a bad question.
9         No, you don't know or she did not own
10  a motor vehicle?
11   A.    No, she did not own a motor vehicle.
12   Q.    Did she own any real estate in
13  California?
14   A.    No.
15   Q.    Do you know where she lived in
16  Santa Barbara?
17   A.    I don't know the exact address. I
18  have visited there.
19   Q.    During the time that she lived in
20  Santa Barbara between 1995 and the time she
21  returned to Taipei in 2002, had she gone back to
22  Taipei for visits?
23   A.    Yes.
24   Q.    And do you know how frequently she
25  went back?

5 (Pages 14 to 17)

Page 18

WILLIAM WU

1
2    A.   About once a year, sometimes less.
3    Q.   Do you know whether your sister is a
4  citizen of Taiwan?
5    A.   She is a citizen of Taiwan.
6    Q.   Do you know where she's registered to
7  vote, if anywhere?
8    A.   No, I don't.
9    Q.   Since she went to Taiwan in 2002 to be
10  with your mother, has she returned to the United
11  States?
12   A.   Yes.
13   Q.   When did she come here?
14   A.   Can I go back to the last question?
15   Q.   Sure.
16   A.   I'm not sure.
17   Q.   If she's been back?
18   A.   I'm not sure if she's been back.
19   Q.   Does she have a lease on a house or an
20  apartment in Santa Barbara, do you know, at the
21  present time?
22   A.   No, not at the moment.
23   Q.   Did she have a lease in Santa Barbara
24  at the time that she returned back to Taiwan?
25   A.   No.  Before she moved back to Taiwan,

Page 19

WILLIAM WU

1
2  she came back to Diamond Bar and lived there.
3    Q.   When did she move back to Diamond Bar?
4    A.   She was there for a couple of months,
5  I can't remember exact -- the exact date.
6    Q.   Did she move to Diamond Bar after your
7  father died or before?
8    A.   Before.
9    Q.   And Diamond Bar, was that the house
10  that your family had owned?
11   A.   Yes.
12   Q.   And she moved back there?
13   A.   Yes.
14   Q.   Does the family still own that house
15  in Diamond Bar?
16   A.   Yes.
17   Q.   What's the address of it?
18   A.   2742 Rocky Trail Road.
19   Q.   I take it that your family owned that
20  home?
21   A.   Yes.
22   Q.   When did they buy it?
23   A.   1994, I believe.
24   Q.   And that's when the family first came
25  over here to the U.S.?

Page 20

WILLIAM WU

1
2        MR. VETH:  I thought it was December
3  of '93.
4    Q.   And they bought the house?
5    A.   A couple of months after that.
6    Q.   Who bought the house?
7    A.   My parents.
8    Q.   Now, when your daughter moved back to
9  the house --
10       MR. SEABLOM:  Sister.
11   Q.   I'm sorry.
12       When your sister moved back to the
13  house, who was living there at that time?
14   A.   My mother.
15   Q.   So your mother was living in the house
16  in California before the time of your father's
17  death?
18   A.   Yes.
19   Q.   Had your mother continuously resided
20  in California from 1994 when she bought the house
21  up until the time of your father's death?
22   A.   Yes.
23   Q.   Is it fair to say that your mother
24  returned to Taiwan after your dad died?
25   A.   Returned as in moving back

Page 21

WILLIAM WU

1
2  permanently?
3    Q.   Yes.
4    A.   Yes.
5    Q.   Is your mother a U.S. citizen?
6    A.   Yes.
7    Q.   And when did she become a U.S.
8  citizen?
9    A.   The same time at my sister, but I
10  can't remember when.
11   Q.   They applied together?
12   A.   Yes.
13   Q.   And do you have --
14       MR. HOLLAND:  Strike that.
15   Q.   Have you seen copies of the passports
16  for you or your sister -- sorry -- for your
17  sister or your mother?
18   A.   Yes.
19   Q.   And where did you see them?
20   A.   Both in California and Taiwan.
21   Q.   Now, between 1993 and 2002 when your
22  mother returned to Taiwan, would she go back to
23  Taiwan to visit?
24   A.   Yes.
25   Q.   And how frequently would she go back?

6 (Pages 18 to 21)

Page 26

WILLIAM WU

1
2  April --
3    Q.   How about April 7, 1949?
4    A.   Yes.  April 7, yes.
5    Q.   That's correct?
6    A.   That's correct.
7    Q.   In 1949?
8    A.   Yes.
9    Q.   And did your father have a U.S.
10 passport?
11   A.   No.
12   Q.   Did he have a green card?
13   A.   Yes.
14   Q.   And when did he get that green card?
15   A.   I believe 1994.
16   Q.   And I take it your mother is a citizen
17 of Taiwan; is that correct?  I asked that
18 question for you and your sister.
19   A.   Yes.
20   Q.   Was your father a citizen of Taiwan at
21 the time of his death?
22   A.   Yes.
23   Q.   And he was not a U.S. citizen?
24   A.   No.
25   Q.   When did your father first come over

Page 27

WILLIAM WU

1
2  here for business to reside?
3          MR. VETH:  Well, objection.
4          MR. HOLLAND:  I'll withdraw that
5    question.
6          It's a bad question.
7    Q.   Let's look at your father's work
8  history a little bit.  Can you tell me what type
9  of work he did?
10   A.   He managed the women's shoes division
11 for ES Originals.
12   Q.   And what type of an educational
13 background did your dad have?
14   A.   He had a bachelor's degree in
15 international business.
16   Q.   From what school?
17   A.   I know the Chinese name.
18   Q.   Okay.
19         But it was over in Taiwan?
20   A.   Yes.
21   Q.   And do you know -- can you tell me
22 what year he graduated?
23   A.   No.
24   Q.   How long had he worked for
25 ES Originals?

Page 28

WILLIAM WU

1
2    A.   Over 20 years.
3    Q.   And did he work for ES Originals at
4  the time of his death?
5    A.   Yes.
6    Q.   And had he worked for ES Originals
7  before the family moved to California in late
8  1993?
9    A.   Yes.
10   Q.   What type of a job did he have when he
11 came to work in California for ES Originals?
12   A.   What type of job as in?
13   Q.   What did he do?
14   A.   He managed that women's shoes
15 division.
16   Q.   When you say women's sales division,
17 do you mean did they buy shoes from people in
18 Taiwan and import them into the U.S. or did he
19 run retail stories?  What did he do exactly?
20   A.   I believe he was in charge of putting
21 the orders through the factories in China and
22 Taiwan, and those orders eventually got shipped
23 to the U.S.A.
24   Q.   Now, when your family moved to
25 California in late 1993 and they bought the house

Page 29

WILLIAM WU

1
2  in early 1994, that's the only place that your
3  family lived in the United States?
4    A.   Yes.  Can you rephrase the question
5    again?
6    Q.   Okay.
7          You told me before your family came
8  here in late 1993, correct?
9    A.   Yes.
10   Q.   And your parents bought the house in
11 Diamond Bar in early 1994?
12   A.   Yes.
13   Q.   From 1994 until the time of your
14 father's death, is that the only place that your
15 parents resided in the United States?
16   A.   Yes.
17   Q.   And did your father continuously
18 reside in the United States from late 1993 until
19 the time of his death?
20   A.   What do you mean "continuously"?
21   Q.   Well, did he go back to work in Taiwan
22 at any time between 1993 and 2002?
23         MR. VETH:  For clarification, you mean
24   for residence purposes?
25         MR. HOLLAND:  Yes, for residence

8 (Pages 26 to 29)

Page 30

WILLIAM WU

1
2  purposes or for work assignments.
3     Q.  I mean, would he go back for six
4  months or a year at a time to Taiwan and then
5  come back to the U.S.?
6     A.  He would go back for maybe three, four
7  months at a time.
8     Q.  How frequently did that happen?
9     A.  Probably twice a year.
10     Q.  So is it correct to say that he would
11  spend between six and eight months a year back in
12  Taiwan?
13     A.  Yes.
14     Q.  Did he have a U.S. driver's license?
15     A.  Yes.
16     Q.  What state?
17     A.  California.
18     Q.  And was he registered to vote here?
19  He wouldn't be.
20     A.  Not a citizen.
21     Q.  Not a citizen, okay.
22       MR. HOLLAND:  Strike that.
23     Q.  Did your mom have a driver's license
24  in the U.S.?
25     A.  Yes.

Page 31

WILLIAM WU

1
2     Q.  And do you know if she was registered
3  to vote?
4     A.  I don't believe so.
5     Q.  When your father would go back to
6  Taiwan on his trips, where would he stay in
7  Taiwan?
8     A.  My family has another house in Taiwan.
9  He would stay there.
10     Q.  And how long had your family owned the
11  house in Taiwan?
12       Just for the record, that's the
13  address at No. 28, Alley 1, Lane --
14     A.  Yes.
15     Q.  -- 27, Section 5, Ming-Sheng East
16  Road, Taipei, Taiwan; is that correct?
17     A.  That is correct.
18     Q.  And before you came to the United
19  States in late 1993, did you reside in the house
20  at that address with your family?
21     A.  Yes.
22     Q.  And is that the house you were
23  essentially born and grew up in?
24     A.  No.
25     Q.  How long had you lived in that house

Page 32

WILLIAM WU

1
2  at that address I just gave you before you came
3  to the U.S.?
4     A.  About 13 years.
5     Q.  So you moved there roughly in about
6  1980 or '81?
7     A.  Yes.
8     Q.  And you were about a little boy two or
9  three years old when you moved into that house?
10     A.  I was -- no, I was.  I was probably 11
11  years old.
12     Q.  So you were 11 years old when you
13  moved into that house.  So that would have been
14  in about 1991?
15     A.  Yes.
16     Q.  So you only lived there two years
17  before you moved to the states?
18     A.  Two -- two or three, yes.
19     Q.  Two or three, okay.
20       Now, the family has continued to own
21  the house since you moved to the United States,
22  correct?
23     A.  Yes.
24     Q.  And when your family was in the U.S.,
25  who would take care of the house in Taiwan?

Page 33

WILLIAM WU

1
2     A.  We have a maid.
3     Q.  Did the family own any automobiles in
4  Taiwan that they kept at the house?
5     A.  Yes.
6     Q.  And did they keep automobiles
7  continuously in Taiwan even when your family was
8  residing in California?
9     A.  Yes.
10     Q.  And in addition to the property
11  address that I just read to you before, did your
12  family own any other real estate in Taiwan?
13     A.  Yes.
14     Q.  Tell me what that was.
15     A.  It was the house that we lived in
16  before we moved to the house No. 28.
17     Q.  Okay.
18       And how long had you lived in that
19  previous house?
20     A.  Eight, maybe nine years.
21     Q.  Does your family still own that
22  previous house?
23     A.  Yes.
24     Q.  And what's the address on that?
25     A.  I don't know the address.

9 (Pages 30 to 33)

Page 34

WILLIAM WU

1
2     Q.   Is it rented out?
3     A.   Yes.
4     Q.   So there's tenants in there that pay
5  rent to your mom?
6     A.   Yes.
7     Q.   Is there any other real property that
8  your family owns in Taiwan?
9     A.   No.
10     Q.   Now, at the time of your dad's death
11  in 2002, was he over in Taiwan on a business
12  trip?
13     A.   Yes.
14     Q.   And he was still employed by
15  ES Originals?
16     A.   Yes.
17     Q.   Do you know how he was paid for the
18  work that he did for ES Originals?
19     A.   I'm not sure.
20     Q.   Do you know whether the family in 2002
21  before your dad's death had a banking account in
22  the United States?
23     A.   Yes.
24     Q.   And do you know where that bank
25  account was located?

Page 35

WILLIAM WU

1
2     A.   California.
3     Q.   And do you know what bank?
4     A.   There's a Bank of America.
5     Q.   There's also some record of a Citibank
6  account.
7     A.   Yes.
8     Q.   Was that in the U.S. or in Taipei?
9     A.   I don't know how to answer the
10  question, because I don't know which account
11  you're looking at.
12     Q.   Well, it says U.S. dollar demand
13  deposit account Citibank Taipei branch. It's on
14  that page here.
15        MR. VETH: We don't have that same
16     information. I didn't bring a copy of that.
17        MR. HOLLAND: Oh. Okay.
18     Q.   So it's fair to say you don't know the
19  name of the bank in which your parents had an
20  account in California?
21     A.   All I can recollect is there are two
22  banks that my mother uses. One's the Bank of
23  America in California and there's one other. I
24  believe the name is General Bank.
25     Q.   Do you know if your father was paid in

Page 36

WILLIAM WU

1
2  Taiwanese currency or U.S. dollars?
3     A.   He was paid in both.
4     Q.   And what would be the distinction how
5  he was paid? Under what circumstances would he
6  be paid in U.S. dollars?
7     A.   I don't know.
8     Q.   Who was his superior at ES Originals?
9     A.   He reported into a multiple -- a
10  number of different people.
11     Q.   Do any of the names come to mind?
12     A.   There's Joyce Safti and Michael Safti.
13  They're both in New York. And there's Steve
14  Lang. He's located in Taiwan.
15     Q.   The Saftis, they were the sons of the
16  founder of the company?
17     A.   Yes.
18     Q.   Do you know what Ting Ho Enterprise
19  Company Limited is?
20     A.   To my understanding, it is the
21  ES Originals Taipei branch.
22     Q.   Had your dad work worked for that
23  company before he worked for ES Originals?
24     A.   I believe they're the same company.
25     Q.   Do you know who Mr. Wei Peng Tuan is?

Page 37

WILLIAM WU

1
2     A.   Yes.
3     Q.   Can you tell me?
4     A.   He's my godfather.
5     Q.   He is a friend of your dad's?
6     A.   Yes.
7     Q.   And where does he reside?
8     A.   Also in Diamond Bar, California.
9     Q.   Did your father know him before he
10  moved to Diamond Bar, California?
11     A.   Yes.
12     Q.   He knew him from Taiwan?
13     A.   Yes.
14     Q.   Does Mr. Tuan still reside in Diamond
15  Bar?
16     A.   I believe so, yes.
17     Q.   Do you happen to know the street
18  address?
19     A.   Yes. 2741 Wagon Train, Diamond Bar,
20  California.
21     Q.   And before your dad's death, do you
22  know how long he had known Mr. Tuan for?
23     A.   They went to college together.
24     Q.   What type of business is Mr. Tuan in?
25     A.   He is also in the shoe industry.

10 (Pages 34 to 37)

Page 46

WILLIAM WU

1
2     A.   No, not that I know of.
3     Q.   Did he have a family doctor?
4     A.   No.
5     Q.   Was he taking any medication that you
6 were aware of?
7     A.   Not that I'm aware of.
8     Q.   And did your dad have a Social
9 Security card here?
10    A.   Yes.
11    Q.   And did he have a driver's license in
12 the U.S., your father?
13    A.   Yes.
14    Q.   And other than the house in Diamond
15 Bar, California, did he own any other real
16 property in the United States?
17    A.   No.
18    Q.   Did your parents own an automobile
19 here in the U.S.?
20    A.   Yes.
21    Q.   Was that a leased car or a purchased
22 car?
23    A.   Purchased.  My family -- my family has
24 two.
25    Q.   Two, okay.

Page 47

WILLIAM WU

1
2     Have you seen your father's birth
3 certificate?
4     A.   No.
5     Q.   Have you seen your mom's birth
6 certificate?
7     A.   No.
8     Q.   Have you seen your sister's birth
9 certificate?
10    A.   No.
11    Q.   And have you seen your own birth
12 certificate?
13    A.   No.
14    Q.   Do you know where those documents are?
15    A.   I don't know.
16    Q.   Do you know whether your father filed
17 income tax returns in Taiwan between the years
18 1993 and 2002?
19    A.   Yes.
20    Q.   He did?
21    A.   Yes.
22    Q.   And do you know where copies of those
23 tax returns are kept?
24    A.   I believe some of them are right here.
25    Q.   Okay.  Let's take a look at them.

Page 48

WILLIAM WU

1
2     MR. HOLLAND:  You want to mark that
3 whole bundle as Exhibit A?
4     MR. VETH:  We may want to make sure we
5 both have the same.
6     MR. HOLLAND:  I agree.  I'll give you
7 what I have and we'll have the witness look
8 at them and make sure they are the same.
9     MR. VETH:  That's fine.  I failed to
10 Bates stamp them before we sent them to you.
11    MR. HOLLAND:  Let's mark that as A.
12    (Chinese documents marked Defendants'
13 Exhibit A, for identification, as of this
14 date.)
15    Q.   You're looking at a set of documents
16 and we've marked a duplicate set as Exhibit A for
17 identification.
18    Can you tell me what these are, sir?
19    A.   The first page is the tax return.
20    Q.   And who is the person who filed the
21 tax return?
22    First of all, I take it you're fluent
23 in Chinese; is that right?
24    A.   Yes.
25    Q.   Is there any particular dialect that

Page 49

WILLIAM WU

1
2 you're looking at or that you're fluent in?
3     A.   It's the same dialect, but it's in
4 accounting technical terms.
5     Q.   Let's look at the first page.  First
6 of all, just tell us who the taxpayer is or
7 payers who filed this return.
8     A.   First page, I believe, is my mother.
9     Q.   And can you tell me what year it's
10 filed for?
11    A.   I can't.  I don't see that information
12 on here.
13    Q.   Can you just generally describe for me
14 what's the information that's reported on this
15 return, on this first page of the return?
16    A.   On the bottom there's some dividend
17 payments.
18    Q.   That's dividends income?
19    A.   Dividends income, yes.  Dividend
20 income and the tax that was paid to the Taiwanese
21 government.
22    Q.   What about the top couple of six or
23 eight lines on the first page?  Is that name and
24 address of the taxpayer?
25    A.   Name and address, yes.

13 (Pages 46 to 49)

**EXHIBIT G**

1   MICHAEL Y. LO, ESQ.                          THE HONORABLE MARGARET M. MORROW
    LAW OFFICES OF MICHAEL Y. LO
2   506 N. Garfield Ave., #280
    Alhambra, CA 91801
3   Bar No. : 101702
    Tel: (626) 289-8838
4   Attorney for Plaintiff Isaac Hung

5

6

7
                    UNITED STATES DISTRICT COURT
8
                   CENTRAL DISTRICT OF CALIFORNIA
9

10  _____       MISC. NO. _____ MMM (RNBx)

11

12
    IN RE AIR CRASH DISASTER                 PLAINTIFF ISAAC HUNG'S
13                                           RESPONSES TO DEFENDANTS'
    OVER THE STRAITS OF TAIWAN,              JOINT FIRST SETS OF REQUESTS
14                                           FOR ADMISSION,
    ON MAY 25, 2002                          INTERROGATORIES, AND
15                                           REQUESTS FOR PRODUCTION TO
                                             PLAINTIFFS REGARDING FORUM
16                                           NON CONVENIENS ISSUES

17  _____
                                             This Document Relates to: Case No.
18
                                             03-3635 MMM
19

20       Plaintiff Isaac Hung hereby responds to the Defendants' Joint First Sets of Requests for

21  Admission, Interrogatories, and Requests for Production to Plaintiffs Regarding Forum Non

22  Conveniens Issues as follows.

23

24                          GENERAL OBJECTIONS

25       A.    Plaintiff objects to each of Defendants' requests to the extent that they,

26  individually or cumulatively, purport to impose on Plaintiff duties and obligations which

27

28
                                     1                    78

1  SPECIAL INTERROGATORY NO. 4:

2      State the following for each Plaintiff and each Decedent:

3      a.      Full name, including other names by which Plaintiff or Decedent has been or was

4  known, including nicknames, maiden names, and aliases;

5      b.      Date and place of birth;

6      c.      Country or countries of citizenship;

7      d.      Government identification number and/or Social Security Number (and issuing

8  country);

9      e.      All addresses at which Plaintiff or Decedent lived during the past twenty (20)

10  years including Plaintiff's current address;

11      f.      Occupation(s), employer(s) and business address(es) for the past ten (10) years;

12      g.      The location of all real property owned during the past ten (10) years and a

13  description of that property;

14      h.      The location of all brokerage and bank accounts owned during the past ten (10)

15  years and a description of those accounts;

16      I.      Membership in any unions or other organizations for the past ten (10) years and

17  the location of those unions or organizations;

18      j.      Which Government or Governments issued Plaintiff or Decedent a driver's

19  license and/or automobile registration in the past ten (10) years; and

20      k.      For the past ten (10) years, where Plaintiff or Decedent has been/was registered to

21  vote and where he/she voted.

22      RESPONSE TO SPECIAL INTERROGATORY NO. 4:

23      Objection. Compound. Contains multiple discrete subparts. Violates FRCP, Rule 33(a).

24  Without waiving said objections and reserving the right to amend, modify or expand this

25  response, plaintiff responds and objects to each of the following discrete subparts as follows:

26      a.      Plaintiff:      Son, Isaac Hung

27          Decedents:      Father, Johnson K.F. Hung

28                      Mother, Wu Wei-Chin Hung

9

79

| | | | |
|---|---|---|---|
| 1 | b. | Plaintiff: | Son, 01/25/1957 |
| 2 | | Decedents: | Father, 10/08/1923 |
| 3 | | | Mother, 07/19/1927 |
| 4 | | | |
| 5 | c. | Plaintiff: | Son, U.S. Citizen |
| 6 | | Decedents: | Father, Taiwan Citizen; Hong Kong Resident |
| 7 | | | Mother, Taiwan Citizen; U.S. Permanent Resident; |
| 8 | | | Hong Kong Resident |

9    d.    Objection. Not relevant nor reasonably calculated to lead to the discovery of
10  admissible evidence. Invades right of privacy. Without waiving said objections, the following is
11  a list of plaintiff and decedent's identification number and/or Social Security Numbers:

| 12 | Plaintiff: | U.S. Passport No. 203034747 |
|---|---|---|
| 13 | | Social Security No. 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 |
| 14 | | |
| 15 | Decedents: | Father, U.S. Social Security No. 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 |
| 16 | | Mother, U.S. Permanent Resident No. A24591626 |
| 17 | | U.S. Social Security No. 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 |

18    e.    Objection. Overbroad, burdensome and oppressive. Not relevant nor reasonably
19  calculated to lead to the discovery of admissible evidence. Invades right of privacy. Without
20  waiving said objections, decedent's residence addresses which are known for up to the last 10
21  years are as follows:

22              U.S. address: 1057 Old Mill Road, Pasadena, CA 91108
23              Taiwan address: No. 65, Hsin-Min Rd., Pei-tou Dist., Taipei City, Taiwan
24

25      Without waiving said objections, plaintiff's residence addresses which are known for up
26  to the last 10 years are as follows:

27              1. 1057 Old Mill Road, Pasadena, CA 91108
28              2. 2340 Branden St., Los Angeles, CA 90026

1        f.     Decedent's occupation(s), employer(s) and business address(es) for the past ten

2  (10) years are as follows:

3                Father, Real Estate Investor

4                Mother, Real Estate Investor

5

6      Plaintiff's occupation(s), employer(s) and business address(es) for the past ten (10) years

7  are as follows:

8                Real Estate Management;

9                ICM Resources Inc.,

10              2555 Huntington Drive, Suite A, San Marino, CA 91108

11

12        g.     Objection. Not relevant nor reasonably calculated to lead to the discovery of

13  admissible evidence. Invades right of privacy.

14

15        h.     Objection. Not relevant nor reasonably calculated to lead to the discovery of

16  admissible evidence. Right of Privacy privilege. Without waiving said objections and reserving

17  the right to amend, modify or expand this response, plaintiff respond as follows: Decedent's

18  brokerage and bank accounts for the past ten (10) years are as follows:

19                Bank of America located at San Marino, California;

20                Quick & Reilly Brokerage located at Glendale, California

21  All relevant, non-privileged documents in plaintiff possession, custody or control will be

22  produced here in the United States.

23

24        I.     Objection. Overbroad, burdensome and oppressive. Not relevant nor reasonably

25  calculated to lead to the discovery of admissible evidence. Invades right of privacy. Without

26  waiving said objections and reserving the right to amend, modify or expand this response.

27  plaintiff respond as follows: Decedent's membership in any unions or other relevant

11

1 | organizations for the past ten (10) years and the location of those unions or relevant

2 | organizations are as follows: None

3

4 |       j.     Objection. Not relevant nor reasonably calculated to lead to the discovery of

5 | admissible evidence. Invades right of privacy. Without waiving said objections and reserving

6 | the right to amend, modify or expand this response, plaintiff respond as follows:

7 |       Decedents:   Father, California Drivers License No. N3575271

8 |       Mother, California Drivers License No. C3815852

9

10 |       k.     Objection. Not relevant nor reasonably calculated to lead to the discovery of

11 | admissible evidence. Invades right of privacy.

12

13 | **SPECIAL INTERROGATORY NO. 5:**

14 |       For each Plaintiff, state the name, citizenship, and current address of all persons you

15 | allege to be Beneficiaries of Plaintiff's lawsuit.

16 |       **RESPONSE TO SPECIAL INTERROGATORY NO. 5:**

17 |       Objection. Calls for a legal opinion and conclusion. Without waiving said objections

18 | and reserving the right to amend, modify or expand this response, the following is a list of all

19 | persons, including their citizenship and current address, who are listed in the operative

20 | complaint: Plaintiff Isaac Hung is a United States Citizen.

21

22 | **SPECIAL INTERROGATORY NO. 6:**

23 |       For each Decedent, state the name, citizenship, and current address of Decedent's

24 | relatives, including, but not limited to, current and former spouses (including common-law

25 | spouses), parents, siblings, children, grandchildren, step-children, and adopted children.

26 |       **RESPONSE TO SPECIAL INTERROGATORY NO. 6:**

27 |       Children of Decedents:   Mary Zau    (Daughter)

28 |       Marina Jeng   (Daughter)

12

1    All income tax returns (or any equivalent thereto and including all attached schedules)

2  that were filed by or on behalf of each Decedent for the five (5) years prior to the Accident with

3  any Government.

4    **RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

5    Objection.  Not relevant nor reasonably calculated to lead to the discovery of admissible

6  evidence.  Invades right of privacy.  Income Tax privilege.  Without waiving said objections, all

7  of decedent's income tax returns (or equivalent) for up to the last 5 years, which are in the

8  plaintiff's possession, custody or control,  will be produced here in the United States.

9

10

11  Dated:  1/5/04                    LAW OFFICES OF MICHAEL Y. LO

12

13                      By

14                         Michael Y. Lo, Esq.
                           506 N. Garfield Ave., Suite 280
15                         Alhambra, CA 91801
                           Tel: (626) 289-8838
16                         Attorneys for Plaintiff, Isaac Hung

17  4101-REV.WPD

18

19

20

21

22

23

24

25

26

27

28

1   Michael Y. Lo, Esq.
    Law Offices of Michael Y. Lo
2   506 N. Garfield Ave., #280
    Alhambra, CA 91801
3   Tel :(626)289-8838 Bar No.: 101702

**RECEIVED**

MAR 29 2004

**PERKINS COIE**

SCANNED

4   Attorney for Plaintiff Issac Hung

5

6                  UNITED STATES DISTRICT COURT

7                  CENTRAL DISTRICT OF CALIFORNIA

8

9   _____   MISC.NO._____ MMM (RNBx)

10

11  IN RE AIR CRASH DISASTER        PLAINTIFF ISAAC HUNG'S
    OVER THE STRAITS OF TAIWAN,     SUPPLEMENTAL RESPONSES
12  ON MAY 25, 2002                 TO DEFENDANTS' JOIN
                                    FIRST SETS OF REQUESTS
13                                  FOR ADMISSION,
                                    INTERROGATORIES,
14                                  AND REQUESTS FOR PRODUCTION TO
                                    PLAINTIFFS REGARDING FORUM
15                                  NON-CONVENIENS ISSUES
16  _____

17

18                                  This Document Relates to: Case No.
                                    CV-03-3635 MMM (RNBx)
19

20      THE PLAINTIFF ISSAC HUNG [hereinafter referred to as

21  "plaintiff"], by and through plaintiff's attorneys of record, Law

22  Offices of Michael Y. Lo, hereby responds to the Defendants' request

23  of supplemental responses to Defendants' Join First Set of

24  Interrogatories to Plaintiff Regarding Forum Non Conveniens Issues as

25  follows:

26  SPECIAL INTERROGATORY NO. 4:                              84

27  State the following for each Plaintiff and each Decedent:

28                                  1

    SUPPLEMENTAL RESPONSES TO DEFENDANT'S INTERROGATORIES

b. Date and Place of birth.

e. All addresses at which Plaintiff or Decedent lived during the past twenty (20) years including Plaintiff's current address;

f. Occupation(s), employer(s) and business address(es) for the past ten (10) years;

g. The location of all real property owned during the past ten (10) years and a description of that property.

**SUPPLEMENTAL RESPONSE TO SPECIAL INTERROGATORY NO.4:**

   b. 1) Plaintiff: Issac Hung was born on 01/25/1957 in Taiwan.

       2) Decedents: Father, name: Johnson Hung, was born on 10/08/1923 in China.

             Mother, name: Weichin Wu Hung was born on 07/19/1927 in China.

   e.  Decedents' addresses: 1. U.S. address: 1057 Old Mill Road, Pasadena, CA 91108 (1995 – Date of accident)

      2. Taiwan address: No 65, Hsin-Min Rd., Pei-tou Dist., Taipei City, Taiwan. (1953 - Date of accident)

      Plaintiff's residence addresses during the past ten years are as follows:

         1. 1057 Old Mill Road, Pasadena, CA 91108 (1995-present)

         2. 2340 Branden St., Los Angeles, CA 90026 (1990-1995)

   f. Decedent's occupation (S), employer(s) and business address(es) for the past ten (10) years are as follows:

         1. Father, Real Estate Investor, Self-employed.

            Business address: Suite 5, 8th FL, No16 E. Nan king Rd, and Sec 5 Taipei, Taiwan.

85

2

**SUPPLEMENTAL RESPONSES TO DEFENDANT'S INTERROGATORIES**

Mother, Employed by ICM Resources Inc. in San Marino, CA 91108.

Plaintiff's occupation(s), employer(s) and business address(es) for the past ten (10) years are as follows:

1. Real Estate Management.

   Business address: 2555 Huntington Drive, Suite C, San Marino, CA 91108

2. ICM Resources Inc.

   Business address: 2555 Huntington Drive, Suite C, San Marino, CA 91108

g. There are approximately 10 real properties in the city of Taipei, Taiwan and 12 real properties elsewhere in Taiwan.

**SPECIAL INTERROGATORY NO. 5:**

For each plaintiff, state the name, citizenship, and current address of all persons you allege to be beneficiaries of plaintiff's lawsuit.

**SUPPLEMENTAL RESPONSE TO SPECIAL INTERROGATORY NO. 5:**

The following are the name, citizenship, and current address of the Plaintiff who has claimed himself as one of the beneficiaries of the above-mentioned lawsuit.

1. a. Name            : Issac Hung
   b. Citizenship     : U.S. Citizen
   c. Current Address : 1057 Old Mill Road, Pasadena, CA 91108

2. a. Name            : Myron Hung
   b. Citizenship     : U.S. Citizen
   c. Current Address : 1057 Old Mill Road, Pasadena, CA 91108

3. a. Name            : Joseph Hung

86

3

SUPPLEMENTAL RESPONSES TO DEFENDANT'S INTERROGATORIES

1    SUPPLEMENTAL RESPONSES TO DEFENDANTS' FIRST SET OF REQUESTS FOR

2         PRODUCTION REGARDING FORUM NON CONVENIENS

3   REQUEST FOR PRODUCTION NO. 1:

4   All documents relating to each Plaintiff, Decedent, and Beneficiary

5   issued by or submitted to any Government, including but not limited to

6   applications, registrations, passports and identification cards.

7   SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 1:

8   According to Plaintiffs and Defendants' February 2, 2004, Local Rule

9   37-1 telephone conference, Defendants agreed to limit their request to

10  "All documents regarding citizenship and residency relating to each

11  Plaintiff and decedent, issued by or submitted to any Government,

12  including but not limited to applications, registrations, passports

13  and identification and identification cards."Defendants further agreed

14  that Plaintiffs need only produce the requested documents with respect

15  to those Plaintiffs and decedents who have or had any claimed contacts

16  with the United States. See Exhibit A for copies of such documents.

17

18  REQUEST FOR PRODUCTION NO. 3:

19  All income tax returns (or any equivalent thereto and including all

20  attached schedules) that were filed by or on behalf of each Decedent

21  for the five (5) years prior to the Accident with any Government.

22  RESPONSE TO REQUEST FOR PRODUCTION NO. 3:

23  Objection.  Not relevant nor reasonably calculated to lead to the

24  discovery of admissible evidence.  Invades right of privacy.  Income

25  Tax privilege.

26  Dated: 3.22.04

27                                        Michael Y. Lo, Attorney
                                          For Plaintiffs

28
                        20              87

         SUPPLEMENTAL RESPONSES TO DEFENDANT'S INTERROGATORIES

SCANNED

**EXHIBIT H**

1   Steven D. Archer, Esq. (State Bar No. 63834)
    Michael A. Geibelson, Esq. (State Bar No. 179970)
2   Bree Arlyn-Pessin, Esq. (State Bar No. 198573)
    **ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
3   2049 Century Park East, Suite 3700
    Los Angeles, CA 90067-3211
4   Telephone:      (310) 552-0130
    Facsimile:      (310) 229-5800
5
    Bruce A. Finzen, Esq. (State Bar No. 139342)
6   **ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
    1801 K Street, N. W.,
7   Washington, DC 20006
    Telephone:      (202) 775-0725
8   Facsimile:      (202) 223-8604

9   Attorneys for Plaintiffs

10

11                 UNITED STATES DISTRICT COURT

12            FOR THE CENTRAL DISTRICT OF CALIFORNIA

13

14

15  IN RE:                          )  **ANSWERS, OBJECTIONS AND**
                                     )  **RESPONSES TO DEFENDANTS' JOINT**
16                                   )  **FIRST SET OF REQUESTS FOR**
    **AIR CRASH OVER THE TAIWAN**    )  **ADMISSION, SPECIAL**
17  **STRAITS ON MAY 25, 2002**      )  **INTERROGATORIES, AND REQUESTS**
                                     )  **FOR PRODUCTION TO PLAINTIFFS**
18                                   )  **REGARDING** *FORUM NON*
                                     )  *CONVENIENS* **ISSUES**
19                                   )
                                     )
20                                   )  **This Document relates to:**
                                     )
21                                   )  **DAVID SHIH, et al., v.**
                                     )  **CHINA AIRLINES, LTD.,**
22                                   )  **THE BOEING COMPANY, etc., et al.**
                                     )
23  _____ )  **CASE NO. CV 03-05025 MMM (RNBx)**

24

25      COME NOW THE PLAINTIFFS, DAVID SHIH and KUEI-HSIEN SHIH, Individually,

26  DAVID SHIH as Personal Representative and Executor of the Estate of PAI-HUNG SHIH, M.D.

27  and DAVID SHIH as Personal Representative and Executor of the Estate of PENG-YU SHIH,

28  [hereinafter referred to as "plaintiffs"] by and through plaintiffs' attorneys of record, Robins.

---

                                    1

                                                                    **88**

1  witnesses as they are discovered.

2  Additionally, plaintiffs plan on using an expert economist to prove up the financial losses

3  to the heirs. The expert economist will be made available in the United States for discovery

4  purposes in accordance with the *Federal Rules of Civil Procedure.*

5  Further, plaintiffs plan on using experts to prove up decedents' mental and physical pain

6  and suffering and fear of impending death. These experts will be made available in the United

7  States for discovery purposes in accordance with the *Federal Rules of Civil Procedure.*

8

9  **SPECIAL INTERROGATORY NO. 4:**

10  State the following for each Plaintiff and each Decedent:

11  a.    Full name, including other names by which Plaintiff or Decedent has been or was

12  known, including nicknames, maiden names, and aliases;

13  b.    Date and place of birth;

14  c.    Country or countries of citizenship;

15  d.    Government identification number and/or Social Security Number (and issuing

16  country);

17  e.    All addresses at which Plaintiff or Decedent lived during the past twenty (20)

18  years including Plaintiff's current address;

19  f.    Occupation(s), employer(s) and business address(es) for the past ten (10) years;

20  g.    The location of all real property owned during the past ten (10) years and a

21  description of that property;

22  h.    The location of all brokerage and bank accounts owned during the past ten (10)

23  years and a description of those accounts;

24  i.    Membership in any unions or other organizations for the past ten (10) years and

25  the location of those unions or organizations;

26  j.    Which Government or Governments issued Plaintiff or Decedent a driver's

27  license and/or automobile registration in the past ten (10) years; and

28  k.    For the past ten (10) years, where Plaintiff or Decedent has been/was registered to

---

9

89

Answers, Objections and Responses to Defendants' Joint First Set of Requests for Admission, Special
Interrogatories, and Requests for Production to Plaintiffs Regarding *Forum Non Conveniens* Issues

60029558.1

1  vote and where he/she voted.

2  ## RESPONSE TO SPECIAL INTERROGATORY NO. 4:

3  Objection.  Compound, vague, ambiguous, over broad, burdensome and oppressive.

4  Contains multiple discrete sub-parts.  Violates *Federal Rules of Civil Procedure*, Rule 33(a).

5  Without waiving the full force and effect of these Objections, in the spirit of liberal

6  discovery and reserving the right to amend, modify or expand this response, plaintiff(s) responds

7  and objects to each of the following discrete sub-parts as follows:

8    a.    Plaintiffs:   1.   Hsing-Min Shih, aka David Shih, aka David H. Shih;

9                       2.   Kuei-Hsien Shih, aka Helen Lin, aka Helen Shih;

10            Decedents:   1.   Pai-Hung Shih, M.D., aka Hubert Shih, M.D.;

11                       2.   Peng-Yu Shih, aka Maggie Shih;

12    b.    Plaintiffs:   1.   January 23, 1933 in Tainan, Taiwan, Republic of China;

13                       2.   April 4, 1935 in Lu-Kung, Taiwan, Republic of China;

14            Decedents:   1.   May 12, 1961 in Tainan, Taiwan, Republic of China;

15                       2.   January 17, 1993 in Taipei, Taiwan, Republic of China;

16    c.    Plaintiffs:   1.   United States of America;

17                       2.   United States of America;

18            Decedents:   1.   Taiwan, Republic of China;

19                       2.   Taiwan, Republic of China;

20    d.    Objection.  Not relevant nor reasonably calculated to lead to the discovery of

21  admissible evidence.  Violates each plaintiff's and each decedent's rights of privacy.

22  Without waiving the full force and effect of these objections, in the spirit of liberal

23  discovery and reserving the right to amend, modify or expand this response, plaintiffs respond as

24  follows:

25           Plaintiffs:   1.   United States of America Passport No. 702214397, Social

26                           Security No. 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;

27                       2.   United States of America Passport No. 204076793, Social

28                           Security Card No. 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;

10

Answers, Objections and Responses to *Defendants' Joint First Set of Requests for Admission, Special Interrogatories, and Requests for Production to Plaintiffs Regarding Forum Non Conveniens Issues*

6002955B.1

|    |            |    |    |                                                    |
|----|------------|----|----|----------------------------------------------------|
| 1  | Decedents: | 1. |    | United States of America Permanent Resident Green Card |
| 2  |            |    |    | No. A47518519, Social Security No. presently unknown. |
| 3  |            |    |    | Taiwan, Republic of China Government Identification Card |
| 4  |            |    |    | No. A120962799;                                    |
| 5  |            | 2. |    | United States of America Permanent Resident Green Card |
| 6  |            |    |    | No. A47518521, Social Security No. presently unknown. |
| 7  |            |    |    | Taiwan, Republic of China Government Identification Card |
| 8  |            |    |    | No. A228769818;                                    |

9      e.     Objection. Over broad, burdensome and oppressive. Not relevant nor reasonably

10   calculated to lead to the discovery of admissible evidence. Not reasonable limited as to either

11   time or scope. Violates each plaintiff's and each decedent's rights of privacy

12      Without waiving the full force and effect of these objections, in the spirit of liberal

13   discovery and reserving the right to amend, modify or expand this response, and assuming that

14   the time and scope of the Interrogatory are limited to the period of ten (10) years, plaintiffs

15   respond as follows:

|    |            |    |    |                                                    |
|----|------------|----|----|----------------------------------------------------|
| 16 | Plaintiffs: | 1. | a. | 7F, No. 18, Lane 23, Juey-An Street,              |
| 17 |            |    |    | Taipei, Taiwan, Republic of China;                |
| 18 |            |    | b. | 6540 Creek Bank Court,                            |
| 19 |            |    |    | Santa Clara CA 95120;                             |
| 20 |            |    | c. | 5 Buttonwood,                                     |
| 21 |            |    |    | Irvine, CA 92614;                                 |
| 22 |            |    | d. | 2353 Running Water Court,                         |
| 23 |            |    |    | Santa Clara, CA 95054;                            |
| 24 |            |    | e. | 3551 Pine Street,                                 |
| 25 |            |    |    | Irvine, CA 92614;                                 |
| 26 |            | 2. | a. | 7F, No. 18, Lane 23, Juey-An Street,              |
| 27 |            |    |    | Taipei, Taiwan, Republic of China;                |
| 28 |            |    | b. | 6540 Creek Bank Court,                            |

91

11

Answers, Objections and Responses to Defendants' Joint First Set of Requests for Admission, Special
Interrogatories, and Requests for Production to Plaintiffs Regarding *Forum Non Conveniens* Issues

60029558.1

SCANNED

| | | | | |
|---|---|---|---|---|
| 1 | | | | Santa Clara CA 95120; |
| 2 | | | c. | 5 Buttonwood, |
| 3 | | | | Irvine, CA 92614; |
| 4 | | | d. | 2353 Running Water Court, |
| 5 | | | | Santa Clara, CA 95054; |
| 6 | | | e. | 3551 Pine Street, |
| 7 | | | | Irvine, CA 92614; |
| 8 | Decedents: | 1. | a. | 5 Buttonwood, |
| 9 | | | | Irvine, CA 92614; |
| 10 | | | b | 3551 Pine Street, |
| 11 | | | | Irvine, CA 92614; |
| 12 | | | c. | 5F, No. 19, Lane 132, Ta-Ann Road, Section 2, |
| 13 | | | | Taipei, Taiwan, Republic of China; |
| 14 | | | d. | 7F, No. 18, Lane 23, Juey-An Street, |
| 15 | | | | Taipei, Taiwan, Republic of China; |
| 16 | | 2. | a. | 5 Buttonwood, |
| 17 | | | | Irvine, CA 92614; |
| 18 | | | b | 3551 Pine Street, |
| 19 | | | | Irvine, CA 92614; |
| 20 | | | c. | 5F, No. 19, Lane 132, Ta-Ann Road, Section 2, |
| 21 | | | | Taipei, Taiwan, Republic of China; |
| 22 | | | d. | 7F, No. 18, Lane 23, Juey-An Street, |
| 23 | | | | Taipei, Taiwan, Republic of China; |

24      f.     Objection. Over broad, burdensome and oppressive. Not relevant nor reasonably

25  calculated to lead to the discovery of admissible evidence. Not reasonable limited as to either

26  time or scope. Violates each plaintiff's and each decedent's rights of privacy.

27      Without waiving the full force and effect of these objections, in the spirit of liberal

28  discovery and reserving the right to amend, modify or expand this response, and assuming that

---

60029558.1

Answers, Objections and Responses to Defendants' Joint First Set of Requests for Admission, Special
Interrogatories, and Requests for Production to Plaintiffs Regarding *Forum Non Conveniens* Issues

      b.     CitiBank,

            Taipei, Taiwan, Republic of China;

      c.     KGI Securities,

            Taipei, Taiwan, Republic of China

    2.     None of which plaintiffs are presently aware.

All relevant, non-privileged documents in plaintiffs' possession, custody or control will be produced in the United States.

    i.     Objection. Over broad, burdensome and oppressive. Not relevant nor reasonably calculated to lead to the discovery of admissible evidence. Violates each plaintiff's and each decedent's rights of privacy.

Without waiving the full force and effect of these Objections, in the spirit of liberal discovery and reserving the right to amend, modify or expand this response, plaintiffs respond as follows:

    Plaintiffs:    1.    None;

               2.    None;

    Decedents:    1.    None;

               2.    None;

    j.     Objection. Not relevant nor reasonably calculated to lead to the discovery of admissible evidence. Violates each plaintiff's and each decedent's rights of privacy.

Without waiving the full force and effect of this Objection, and in the spirit of liberal discovery, plaintiffs respond as follows:

    Plaintiffs:    1.    State of California, United States of America;

               2.    State of California, United States of America;

    k.     Objection. Not relevant nor reasonably calculated to lead to the discovery of admissible evidence. Violates each plaintiff's and each decedent's rights of privacy.

**SPECIAL INTERROGATORY NO. 5:**

For each Plaintiff, state the name, citizenship, and current address of all persons you allege

14             94

60029558.1    Answers, Objections and Responses to Defendants' Joint First Set of Requests for Admission, Special Interrogatories, and Requests for Production to Plaintiffs Regarding *Forum Non Conveniens* Issues

1  custody or control, will be produced here in the United States.

2

3

4  Dated: January 5, 2004          ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

5

6                                 By: _____
                                       Steven D. Archer, Esq.
7                                      Attorneys For Plaintiffs
                                   DAVID SHIH and KUEI-HSIEN SHIH, Individually,
8                                  DAVID SHIH as Personal Representative and Executor
                                   of the Estate of PAI-HUNG SHIH, M.D. and DAVID
9                                  SHIH as Personal Representative and Executor of the Estate
                                   of PENG-YU SHIH

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                                          **95**

SCANNED

Answers, Objections and Responses to Defendants' Joint First Set of Requests for Admission, Special
Interrogatories, and Requests for Production to Plaintiffs Regarding *Forum Non Conveniens* Issues

60029558.1

**EXHIBIT I**

1  Steven D. Archer, Esq. (State Bar No. 63834)
   Michael A. Geibelson, Esq. (State Bar No. 179970)
2  Bree Arlyn-Pessin, Esq. (State Bar No. 198573)
   **ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
3  2049 Century Park East, Suite 3700
   Los Angeles, CA 90067-3211
4  Telephone:     (310) 552-0130
   Facsimile:      (310) 229-5800
5
   Bruce A. Finzen, Esq. (State Bar No. 139342)
6  **ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
   1801 K Street, N. W.,
7  Washington, DC 20006
   Telephone:     (202) 775-0725
8  Facsimile:      (202) 223-8604

9  Attorneys for Plaintiffs

10

11                    UNITED STATES DISTRICT COURT

12              FOR THE CENTRAL DISTRICT OF CALIFORNIA

13

14

15  IN RE:                        )   **ANSWERS, OBJECTIONS AND**
                                  )   **RESPONSES TO DEFENDANTS' JOINT**
16                                )   **FIRST SET OF REQUESTS FOR**
    **AIR CRASH OVER THE TAIWAN** )   **ADMISSION, SPECIAL**
17  **STRAITS ON MAY 25, 2002**   )   **INTERROGATORIES, AND REQUESTS**
                                  )   **FOR PRODUCTION TO PLAINTIFFS**
18                                )   **REGARDING** *FORUM NON*
                                  )   *CONVENIENS* **ISSUES**
19                                )
                                  )   **This Document relates to:**
20                                )
                                  )   **CHIH-CHING CHIU, et al., v.**
21                                )   **CHINA AIRLINES, LTD.,**
                                  )   **THE BOEING COMPANY, etc., et al.**
22                                )
                                  )   **CASE NO. CV 03-7603 MMM (RMBx)**
23  _____)

24      COME NOW THE PLAINTIFFS, CHIH-CHING CHIU, individually, as a Successor-in-

25  Interest and as a Personal Representative of the Estate of CHE-MING LUNG, deceased, SHAO-

26  CHI LUNG, individually, YU-CHIEH LUNG, individually, KO-CHUNG LUNG, individually,

27  and AMY PENG, individually, Heirs of CHE-MING LUNG, deceased, [hereinafter referred to as

28  "plaintiffs"] by and through plaintiffs' attorneys of record, Robins, Kaplan, Miller & Ciresi

---

1

96

60029572.1
Answers, Objections and Responses to Defendants' Joint First Set of Requests for Admission, Special
Interrogatories, and Requests for Production to Plaintiffs Regarding *Forum Non Conveniens* Issues

1       Additionally, plaintiffs plan on using an expert economist to prove up the financial losses

2 to the heirs. The expert economist will be made available in the United States for discovery

3 purposes in accordance with the *Federal Rules of Civil Procedure.*

4       Further, plaintiffs plan on using experts to prove up decedent's mental and physical pain

5 and suffering and fear of impending death. These experts will be made available in the United

6 States for discovery purposes in accordance with the *Federal Rules of Civil Procedure.*

7

8 **SPECIAL INTERROGATORY NO. 4:**

9       State the following for each Plaintiff and each Decedent:

10       a.     Full name, including other names by which Plaintiff or Decedent has been or was

11 known, including nicknames, maiden names, and aliases;

12       b.     Date and place of birth;

13       c.     Country or countries of citizenship;

14       d.     Government identification number and/or Social Security Number (and issuing

15 country);

16       e.     All addresses at which Plaintiff or Decedent lived during the past twenty (20)

17 years including Plaintiff's current address;

18       f.     Occupation(s), employer(s) and business address(es) for the past ten (10) years;

19       g.     The location of all real property owned during the past ten (10) years and a

20 description of that property;

21       h.     The location of all brokerage and bank accounts owned during the past ten (10)

22 years and a description of those accounts;

23       i.     Membership in any unions or other organizations for the past ten (10) years and

24 the location of those unions or organizations;

25       j.     Which Government or Governments issued Plaintiff or Decedent a driver's

26 license and/or automobile registration in the past ten (10) years; and

27       k.     For the past ten (10) years, where Plaintiff or Decedent has been/was registered to

28 vote and where he/she voted.

**97**

9

**RESPONSE TO SPECIAL INTERROGATORY NO. 4:**

Objection. Compound, vague, ambiguous, over broad, burdensome and oppressive. Contains multiple discrete sub-parts. Violates *Federal Rules of Civil Procedure*, Rule 33(a).

Without waiving the full force and effect of these Objections, in the spirit of liberal discovery and reserving the right to amend, modify or expand this response, plaintiffs respond and object to each of the following discrete sub-parts as follows:

a.    Plaintiffs:    1.    Chih-Ching Chiu, aka Feng Chiu;

2.    Shao-Chi Lung,

3.    Yu-Chieh Lung,

4.    Ko-Chung Lung,

5.    Amy Peng;

Decedent:    Che-Ming Lung, aka Hugo Lung, aka Chien-Ghon Lung;

b.    Plaintiffs:    1.    September 20, 1966 in Taiwan, Republic of China,

2.    June 21, 1996 in Taiwan, Republic of China;

3.    December 11, 1998 in Taiwan, Republic of China;

4.    February 9, 1938 in Hunan, People's Republic of China;

5.    July 4, 1943 in Kiang-Si, People's Republic of China;

Decedent:    February 8, 1966 in Taipei, Taiwan, Republic of China;

c.    Plaintiffs:    1.    Taiwan, Republic of China;

2.    Taiwan, Republic of China;

3.    Taiwan, Republic of China;

4.    United States of America;

5.    United States of America;

Decedent:    Taiwan, Republic of China.

d.    Objection. Not relevant nor reasonably calculated to lead to the discovery of admissible evidence. Violates each plaintiff's and each decedent's rights of privacy.

Without waiving the full force and effect of these objections, in the spirit of liberal discovery and reserving the right to amend, modify or expand this response, plaintiffs respond as

---

10      98

SCANNED

SCANNED

1 | follows:

2 | Plaintiffs: 1. Republic of China Government Identification Card No.
3 | S220273454;

4 | 2. Republic of China Government Identification Card No.
5 | A129842396;

6 | 3. Republic of China Government Identification Card No.
7 | A229648541;

8 | 4. United States of America Social Security Card No.
9 | 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;

10 | 5. United States of America Social Security Card No.
11 | 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;

12 | Decedent: Republic of China Government Identification No. A122082641;

13 | e. Objection. Over broad, burdensome and oppressive. Not relevant nor reasonably

14 | calculated to lead to the discovery of admissible evidence. Not reasonable limited as to either

15 | time or scope. Violates each plaintiff's and each decedent's rights of privacy.

16 | Without waiving the full force and effect of these objections, in the spirit of liberal

17 | discovery and reserving the right to amend, modify or expand this response, and assuming that

18 | the time and scope of the Interrogatory are limited to the period of ten (10) years, plaintiffs

19 | respond as follows:

20 | Plaintiffs: 1. 4F, No. 28, Alley 100, Lane 109, Mu-Cha Road,
21 | Wen-Shan District,
22 | Taipei, Taiwan, Republic of China;

23 | 2. 4F, No. 28, Alley 100, Lane 109, Mu-Cha Road,
24 | Wen-Shan District, Taipei,
25 | Taiwan, Republic of China;

26 | 3. 4F, No. 28, Alley 100, Lane 109, Mu-Cha Road,
27 | Wen-Shan District,
28 | Taipei, Taiwan, Republic of China;

11

99

SCANNED

| | 4. | a. | 236 Alder Gate Street, |
| | | | Monterey Park, California 91755; |
| | | b. | |
| | | | San Francisco, California; |
| | | c. | 12 F, No. 68, Pao-Chiao Road, Hsin-Tien City, |
| | | | Taipei Hsien, Taiwan, Republic of Ching; |
| | 5. | a. | 236 Alder Gate Street, |
| | | | Monterey Park, California 91755; |
| | | b. | |
| | | | San Francisco, California; |
| | | c. | 12 F, No. 68, Pao-Chiao Road, Hsin-Tien City, |
| | | | Taipei, Taiwan, Republic of China; |
| Decedent | | | 4F, No. 28, Alley 100, Lane 109, Mu-Ca Road, |
| | | | Wen-Shan District, Taipei, |
| | | | Taiwan, Republic of China; |

f.     Objection.  Over broad, burdensome and oppressive.  Not relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Not reasonable limited as to either time or scope.  Violates each plaintiff's and each decedent's rights of privacy.

Without waiving the full force and effect of these objections, in the spirit of liberal discovery and reserving the right to amend, modify or expand this response, and assuming that the time and scope of the Interrogatory are limited to the period of ten (10) years, plaintiffs respond as follows:

| Plaintiffs: | 1. | a. | Citibank, |
| | | | Taipei, Taiwan, Republic of China; |
| | | b. | Investment Consultant, |
| | | | Capital Group, |
| | | | Taipei, Taiwan, Republic of China; |
| | | c. | Chien Hua Bank, |

**100**

12

60029572.1

Answers, Objections and Responses to Defendants' Joint First Set of Requests for Admission, Special Interrogatories, and Requests for Production to Plaintiffs Regarding *Forum Non Conveniens* Issues

SCANNED

|   |   |   |   |
|---|---|---|---|
| 1 |   |    | Taipei, Taiwan, Republic of China; |
| 2 |   | d. | Cathay United Bank, |
| 3 |   |    | Taipei, Taiwan, Republic of China; |
| 4 | 2. | None; |   |
| 5 | 3. | None; |   |
| 6 | 4. | a. | China Airlines Ltd., |
| 7 |   |    | Los Angeles, California, |
| 8 |   | b. | China Airlines Ltd., |
| 9 |   |    | San Francisco, California; |
| 10 |   | c. | China Airlines Ltd., |
| 11 |   |    | Taipei, Taiwan, Republic of China; |
| 12 | 5. | None. |   |
| 13 | Decedent: | a. | People's RT-Mark Ltd., Jinan, |
| 14 |   |    | 4F, No. 99, Hua-Yuan Road, |
| 15 |   |    | Jinan, China, People's Republic of China; |
| 16 |   | b. | Special Assistant to the President, |
| 17 |   |    | TESTRITE Group, |
| 18 |   |    | Taiwan, Republic of China; |
| 19 |   | c. | Country Manager, Taiwan, |
| 20 |   |    | Ecquaria Technology Pte Ltd., |
| 21 |   |    | Taiwan, Republic of China; |
| 22 |   | d. | Director, Duty Free Division, |
| 23 |   |    | Commercial Director/Marketing Director, Drinks Division, |
| 24 |   |    | Tait Marketing and Distribution Co., Ltd., |
| 25 |   |    | Taiwan, Republic of China; |
| 26 |   | e. | Vice President, |
| 27 |   |    | Home Boutique, Co., Ltd., |
| 28 |   |    | Taiwan, Republic of China; |

**101**

60029572.1    Answers, Objections and Responses to Defendants' Joint First Set of Requests for Admission, Special Interrogatories, and Requests for Production to Plaintiffs Regarding *Forum Non Conveniens* Issues

1        f.     Commercial Controller,

2              Siemens Ltd., Taiwan

3              Taiwan, Republic of China;

4        g.    Electronic Banking Coordinator/Public Relations,

5              Citibank N.A. Taipei,

6              Taipei, Taiwan, Republic of China.

7      g.    Objection. Not relevant nor reasonably calculated to lead to the discovery of

8 admissible evidence. Violates each plaintiff's and each decedent's rights of privacy.

9      h.    Objection. Not relevant nor reasonably calculated to lead to the discovery of

10 admissible evidence. Violates each plaintiff's and each decedent's rights of privacy.

11     Without waiving the full force and effect of these objections, in the spirit of liberal

12 discovery and reserving the right to amend, modify or expand this response, plaintiffs respond as

13 follows:

14     Plaintiffs' bank accounts are located in the following cities/countries:

15       1.    American Bank,

16           Taipei, Taiwan, Republic of China;

17       2.    None;

18       3.    None;

19       4.    CIBC,

20           Taiwan, Republic of China;

21       5.    Washington Mutual,

22

23     Decedent's bank accounts were located in the following cities/countries:

24       1.    Unknown at this time.

25    Plaintiffs are informed and believe and, upon such information and belief, state that

26 additional relevant documents are believed to be located in Taiwan and in the People's Republic

27 of China. Plaintiffs' discovery continues and plaintiffs reserve the right to amend and/or

28 supplement this Response in the future, as appropriate. However, plaintiffs will assist in

60029572.1

Answers, Objections and Responses to Defendants' Joint First Set of Requests for Admission, Special
Interrogatories, and Requests for Production to Plaintiffs Regarding *Forum Non Conveniens* Issues

1  collecting any relevant information for use in the court proceeding in the United States.  All

2  relevant, non-privileged documents in plaintiffs' possession, custody or control will be produced

3  in the United States.

4        i.     Objection.  Over broad, burdensome and oppressive.  Not relevant nor reasonably

5  calculated to lead to the discovery of admissible evidence.  Violates each plaintiff's and each

6  decedent's rights of privacy.

7        Without waiving the full force and effect of these Objections, in the spirit of liberal

8  discovery and reserving the right to amend, modify or expand this response, plaintiffs respond as

9  follows:

10                 Plaintiffs:    1.    None;

11                                   2.    None;

12                                   3.    None;

13                                   4.

14                                   5.    None;

15                 Decedent:    Plaintiffs are informed and believe and, based upon such

16                                   information and belief respond as follows:

17                                   None.

18       j.     Objection.  Not relevant nor reasonably calculated to lead to the discovery of

19 admissible evidence.  Violates each plaintiff's ane each decedent's rights of privacy.

20       k.     Objection.  Not relevant nor reasonably calculated to lead to the discovery of

21 admissible evidence.  Violates each plaintiff's and each decedent's rights of privacy.

22

23 **SPECIAL INTERROGATORY NO. 5:**

24       For each Plaintiff, state the name, citizenship, and current address of all persons you

25 allege to be Beneficiaries of Plaintiff's lawsuit.

26       **RESPONSE TO SPECIAL INTERROGATORY NO. 5:**

27       Objection.  Calls for an expert legal opinion and conclusion.  Calls for premature expert

28 identification and disclosure in violation of the applicable timing provisions of the *Federal Rules*

---

1 | plaintiff's and each decedent's rights of privacy and 5th Amendment Privilege against self-
2 | incrimination.

3 | Without waiving the full force and effect of these Objections, and in the spirit of liberal
4 | discovery, plaintiffs respond as follows:

5 | Attached hereto and incorporated herein by reference please find photocopies of the
6 | following documents:

7 | 1. Che-Ming Lung's tax documents for 2001;

8 | 2. Che-Ming Lung's tax documents for 2000;

9 | 3. Che-Ming Lung's tax documents for 1999;

10 | 4. Che-Ming Lung's tax documents for 1998.

11 | All of decedent's income tax returns (or equivalent) for up to the last 5 years, which are
12 | in the plaintiffs' possession, custody or control, will be produced here in the United States.

13 |

14 | Dated: January 5, 2004.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

16 | By: _____
17 | Steven D. Archer, Esq.
Attorneys For Plaintiffs
18 | CHIH-CHING CHIU, individually, as a Successor-in-
Interest and as a Personal Representative of the Estate of
CHE-MING LUNG, deceased, SHAO-CHI LUNG,
19 | individually, YU-CHIEH LUNG, individually, KO-
CHUNG LUNG, individually, and AMY PENG,
20 | individually, Heirs of CHE-MING LUNG, deceased

**104**

39

Answers, Objections and Responses to Defendants' Joint First Set of Requests for Admission, Special
Interrogatories, and Requests for Production to Plaintiffs Regarding *Forum Non Conveniens* Issues

60029572.1

SCANNED

**EXHIBIT J**

THE HONORABLE MARGARET M. MORROW

SCANNED

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| _____ | MISC. NO. _____ MMM (RNBx) |
| IN RE AIR CRASH DISASTER OVER THE STRAITS OF TAIWAN, ON MAY 25, 2002 | PLAINTIFF SHENG, YAO-LUNG AND SHENG YANG, SU-CHEN'S RESPONSES TO DEFENDANTS' JOINT FIRST SETS OF REQUESTS FOR ADMISSION, INTERROGATORIES, AND REQUESTS FOR PRODUCTION TO PLAINTIFFS REGARDING FORUM NON CONVENIENS ISSUES |
| _____ | |
| | This Document Relates to: Decedent Sheng, Li-Kuo, Case No. C.D. 033663 MMM, C.D. 035281 |

Plaintiffs Sheng, Yao-Lung and Sheng Yang, Su-chen  ("Plaintiff(s)") hereby respond to the Defendants' Joint First Sets of Requests for Admission, Interrogatories, and Requests for Production to Plaintiffs Regarding Forum Non Conveniens Issues as follows.

Reviewed
By Docketing

1

105

**SPECIAL INTERROGATORY NO. 4:**

State the following for each Plaintiff and each Decedent:

a.      Full name, including other names by which Plaintiff or Decedent has been or was known, including nicknames, maiden names, and aliases;

b.      Date and place of birth;

c.      Country or countries of citizenship;

d.      Government identification number and/or Social Security Number (and issuing country);

e.      All addresses at which Plaintiff or Decedent lived during the past twenty (20) years including Plaintiff's current address;

f.      Occupation(s), employer(s) and business address(es) for the past ten (10) years;

g.      The location of all real property owned during the past ten (10) years and a description of that property;

h.      The location of all brokerage and bank accounts owned during the past ten (10) years and a description of those accounts;

i.      Membership in any unions or other organizations for the past ten (10) years and the location of those unions or organizations;

j.      Which Government or Governments issued Plaintiff or Decedent a driver's license and/or automobile registration in the past ten (10) years; and

k.      For the past ten (10) years, where Plaintiff or Decedent has been/was registered to vote and where he/she voted.

**RESPONSE TO SPECIAL INTERROGATORY NO. 4:**

Objection. Compound. Contains multiple discrete subparts. Violates FRCP, Rule 33(a). Without waiving said objections and reserving the right to amend, modify or expand this response, plaintiff responds and objects to each of the following discrete subparts as follows:

a.      Plaintiffs:      Sheng, Yao-Lung (Father); Sheng Yang, Su-Chen (Mother).

Decedent:      Sheng, Li-Kuo.

**106**

9

SCANNED

| | | | |
|---|---|---|---|
| 1 | b. | Plaintiffs: | Sheng, Yao-Lung (Father), January 13, 1922, Taiwan. |
| 2 | | | Sheng Yang, Su-Chen (Mother), February 24, 1923, Taiwan. |
| 3 | | Decedent: | Sheng, Li-Kuo, January 30, 1958, Taiwan. |
| 4 | c. | Plaintiffs: | All Taiwanese. |
| 5 | | Decedent: | Sheng, Li-Kuo. |
| 6 | | | Taiwan and U.S.A. Citizenship. |

7    d.    Objection.  Not relevant nor reasonably calculated to lead to the discovery of

8 admissible evidence.  Invades right of privacy.  Without waiving said objections, decedent's

9 Government identification number and/or Social Security Number is F121909611 (R.O.C.); and

10 A045361264 (U.S.A)

11    Without waiving said objections, plaintiffs' Government identification number and/or

12 Social Security Numbers are for Sheng, Yao-Lung (Father) D100722890 and for Sheng Yang,

13 Su-Chen (Mother) D200700369..

14    e.    Objection.  Overbroad, burdensome and oppressive.  Not relevant nor reasonably

15 calculated to lead to the discovery of admissible evidence.  Invades right of privacy.  Without

16 waiving said objections, decedent's residence addresses which are known for up to the last 10

17 years are as follows:

18    10F-6, No. 45, Sec. 5, Nanking E. Rd., Lin 12, DongGuang Li, SongShan Dist., Taipei

19 Taiwan; 12427 South Dairy Ashford, Houston, TX 77099.

20    Without waiving said objections, plaintiffs' residence addresses which are known for up

21 to the last 10 years are as follows: Shen, Yao-Lung (Father) and Sheng Yang, Su-Chen (Mother),

22 2F-1, No 5, Lane 267, Tung Hua St., Taipei, Taiwan

23    f.    Decedent's occupation(s), employer(s) and business address(es) for the past ten

24 (10) years are as follows: (1) Purser, China Airlines, 131, Nanking E. Rd., Sec. 3, Taipei,

25 Taiwan. (From July 9, 1986 to the date of the accident). (2) Sales & Marketing Consultant and

26 major shareholder TROIKA INTERNATIONAL CO. LTD, 18F, #38-1, Nanking E, Rd., Sec. 5,

27 Taipei, Taiwan (From 1992 to 1994, part time).

28

**107**

1    Plaintiffs' occupation(s), employer(s) and business address(es) for the past ten (10) years

2    are as follows: Sheng, Yao-Lung (Father) Retired 10 years ago.  Sheng Yang, Su-Chen (Mother)

3    Housewife.

4       g.    Objection.  Not relevant nor reasonably calculated to lead to the discovery of

5    admissible evidence.  Invades right of privacy.

6       h.    Objection.  Not relevant nor reasonably calculated to lead to the discovery of

7    admissible evidence.  Right of Privacy privilege.  Without waiving said objections and reserving

8    the right to amend, modify or expand this response, plaintiffs respond as follows:  Decedent's

9    brokerage and bank accounts for the past ten (10) years are as follows: The International

10   Commercial Bank of China (Taipei) - Savings; First Bank (Taipei).

11      All relevant, non-privileged documents in plaintiffs possession, custody or control will be

12   produced here in the United States.

13      i.    Objection.  Overbroad, burdensome and oppressive.  Not relevant nor reasonably

14   calculated to lead to the discovery of admissible evidence.  Invades right of privacy.  Without

15   waiving said objections and reserving the right to amend, modify or expand this response,

16   plaintiffs respond as follows:  Decedent's membership in any unions or other relevant

17   organizations for the past ten (10) years and the location of those unions or relevant organizations

18   are as follows: None aware of at this time.

19      j.    Objection.  Not relevant nor reasonably calculated to lead to the discovery of

20   admissible evidence.  Invades right of privacy.

21      k.    Objection.  Not relevant nor reasonably calculated to lead to the discovery of

22   admissible evidence.  Invades right of privacy.

23

24   **SPECIAL INTERROGATORY NO. 5:**

25      For each Plaintiff, state the name, citizenship, and current address of all persons you

26   allege to be Beneficiaries of Plaintiff's lawsuit.

27   ///

28   ///

**108**

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Objection. Not relevant nor reasonably calculated to lead to the discovery of admissible evidence. Invades right of privacy. Income Tax privilege. Without waiving said objections, all of decedent's income tax returns (or equivalent) for up to the last 5 years, which are in the plaintiffs' possession, custody or control, will be produced here in the United States.

Dated: January 5, 2004          KREINDLER & KREINDLER, LLP

By _____
          Brian J. Alexander
          Francis G Fleming
          100 Park Avenue
          New York, NY 10017
          (212) 687-8181

          Stuart R. Fraenkel
          Gretchen M. Nelson
          707 Wilshire Blvd., Ste. 5070
          Los Angeles, CA 90017
          (213) 622-6469
          **Attorneys for Plaintiff**

137197.1

25

**109**

**EXHIBIT K**

John J. Veth, Esq. [SBN 132097]
Douglas W. Schroeder [SBN 138679]
SPEISER KRAUSE
One Park Plaza Suite 470
Irvine, California 92614
(949) 553-1421 Telephone
(949) 553-1346 Facsimile

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| Hsiu-Chuan Huang, et al.<br><br>Plaintiffs,<br><br>v.<br><br>China Airlines, et al.<br><br>Defendants. | ) This document relates to:<br>) Case No.: CV 03-5943 CAS (JTLx)<br>) Case No.: CV 03-5938 DDP (CWx)<br>) Case No.: CV 03-5937 JFW (SHSx)<br>)<br>)<br>) **PLAINTIFFS' RESPONSES TO**<br>) **DEFENDANTS' FIRST SET OF**<br>) **INTERROGATORIES REGARDING**<br>) **FORUM NON CONVENIENS**<br>)<br>) |

Plaintiffs, who are parties to case numbers CV 03-5943, CV 03-5938 and

CV 03-5937 ("Plaintiff(s)"), hereby respond to the interrogatories contained within

"Defendants' Joint First Sets of Requests for Admission, Interrogatories, and

*Page* 1

**110**

*Plaintiffs' Responses to Defendants' First Set of Interrogatories*
*Regarding Forum Non Conveniens Issues*

20736

■ No Docket Entry

| DECEDENT: | Ying Yuchih |
|---|---|
| Speiser Krause File No. | 1268.052 |
| ID#: | B100334003 |
| DOB: | 2/28/27 |
| Age at Death: | 75 |
| Marital Status: | Married |
| Education (years): | 16 |
| Educational Degree: | College |
| Occupation: | Taipei City Council Officer (Retired) |
| Estimated Annual Income: | To be ascertained |
| Estimated Net Worth at Death: | To be ascertained |
| Address at death: | No. 10, Alley 34, Lane 89, Sec. 2, Tou-Chang Rd., Tan-Tzu Town, Taichung, Taiwan |
| Inheritance Tax: | To be ascertained |

SCANNED

| CLAIMANT | 1 | 2 | 3 |
|---|---|---|---|
| Name: | Chi-Tao Yuchih | Hsiao-Chun Yu-Chih | Hsiao-Lin Yuchih |
| Relationship: | Son | Daughter | Daughter |
| DOB: | 9/14/64 | 1/16/66 | 3/12/68 |
| Address: | 16F-5, No. 365, Chin-Ha North Rd.., Taichung, Taiwan | 704 Concord Ln. Winficld, IL 60190 USA | 4F, No. 40, Yu-An St., Hsin-Tien City, Taipei Hsien, Taiwan |
| ID #: | B120124709 | To be ascertained | A223552975 |
| Education: | 16 | 18 | 16 |
| Degree: | College | Masters | College |
| Occupation: | Owner of schools | Senior consultant | Owner of schools |
| Dependent on Decedent?: | Yes | To be ascertained | Yes |
| Approx. Monthly Amount: | son has 7 houses all contributed by decedent | To be ascertained | To be ascertained |
| Treated by Doctor: | Yes | No | Yes |
| CLAIMANT | 4 | 5 | |
| Name: | Chi-Wei Yuchih | Chu-Chu Yuchih-Yeh | |
| Relationship: | Son | Wife | |
| DOB: | 4/18/70 | 7/01/42 | |
| Address: | 4F, No. 40, Yu-An St., Hsin-Tien City, Taipei Hsien, Taiwan | 4F, No. 40, Yu-An St., Hsin-Tien City, Taipei Hsien, Taiwan | |
| ID #: | To be ascertained | B200322372 | |
| Education: | 18 | 12 | |
| Degree: | Masters Degree | High School Graduate | |
| Occupation: | To be ascertained | Housewife | |
| Dependent on Decedent?: | Yes | Yes | |
| Approx. Monthly Amount: | $5,000.00 (USD) | 20,000 (NTD) | |
| Treated by Doctor: | No | To be ascertained | |

111

| DECENT: | Ying Yuchih | |
|---|---|---|
| Place of Birth: | Shandong Linqing, China | |
| Nationality: | U.S. Green Card | |
| Physician Info. | To be ascertained | |
| Burial Info. Where, cost, who paid and to whom? | Taiwan, at least NT$2,000,000, claimants | |
| Personal Reps. Court/Atty. Info? | To be ascertained | |

| CLAIMANT | 1 | 2 | 3 |
|---|---|---|---|
| Name: | Chi-Tao Yuchih | Hsiao-Chun Yu-Chih | Hsiao-Lin Yuchih |
| Place of Birth: | Taichung City | Taichung City | Taichung City |
| Nationality: | Taiwan, R.O.C. | Taiwan, R.O.C. | Taiwan, R.O.C. |

| CLAIMANT | 4 | 5 | 6 |
|---|---|---|---|
| Name: | Chi-Wei Yuchih | Chu-Chu Yuchih-Yeh | |
| Place of Birth: | Taipei | Ping-Tung Hsien, Taiwan | |
| Nationality: | Canada | U.S. Citizen | |

112

States.

There may be other witnesses with information relating to the liability of China Airlines and Boeing. For example, China Airlines and Boeing identified certain persons in their respective initial disclosures. The names and location of other individuals is currently the subject of discovery and will be provided when we receive the information. Discovery is continuing.

SPEISER KRAUSE

DATED: January **5**, 2004

_____
John J. Veth, Esq.
Douglas W. Schroeder, Esq.
Attorneys for Plaintiffs

**113**

John J. Veth, Esq. [SBN 132097]
Douglas W. Schroeder [SBN 138679]
SPEISER KRAUSE
One Park Plaza Suite 470
Irvine, California 92614
(949) 553-1421 Telephone
(949) 553-1346 Facsimile

Attorneys for Plaintiffs

RECEIVED

MAR 15 2004

PERKINS COIE

SCANNED

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| Hsiu-Chuan Huang, et al. | ) This document relates to: |
| | ) Case No.: CV 03-5943 MMM (RNBx) |
| Plaintiffs, | ) Case No.: CV 03-5938 MMM (RNBx) |
| v. | ) Case No.: CV 03-5937 MMM (RNBx) |
| | ) |
| China Airlines, et al. | ) |
| | ) **PLAINTIFFS' SUPPLEMENTAL** |
| Defendants. | ) **RESPONSES TO DEFENDANTS'** |
| | ) **FIRST SET OF** |
| | ) **INTERROGATORIES REGARDING** |
| | ) **FORUM NON CONVENIENS** |
| | ) **ISSUES** |

Plaintiffs, who are parties to case numbers CV 03-5943, CV 03-5938 and

CV 03-5937 ("Plaintiff(s)"), hereby provide supplemental responses to the

interrogatories contained within "Defendants' Joint First Sets of Requests for

*Page 1*

**114**

*Plaintiffs' Supplemental Responses to Defendants' First Set of*
*Interrogatories Regarding Forum Non Conveniens Issues*

21221

| CLAIMANT | 1 | 2 | 3 |
|---|---|---|---|
| Name: | Chi-Tao Yuchih | Hsiao-Chun Yu-Chih | Hsiao-Lin Yuchih |
|  | 4b.<br>09/14/64<br>Taichung City | 4b.<br>01/16/66<br>Taichung | 4b.<br>03/12/68<br>Taichung |
|  | 4e.<br>16F-5, No. 365, Chin-Ha North Rd.., Taichung, Taiwan | 4d.<br>U.S. Citizen | 4e.<br>4F, No. 40, Yu-An St., Hsin-Tien City, Taipei Hsien, Taiwan, |
|  | 4f.<br>Owner of Cram Schools<br>Shetzyuan School<br>Taichung Hsien, Taiwan | 4e.<br>704 Concord Lane,<br>Winfield, IL 60190 | 4f.<br>Owner of Cram Schools<br>Shetzyuan School<br>Taichung Hsien, Taiwan |
|  | 4g. To be ascertained | 4f.<br>Senior consultant<br>People soft<br>Illinois | 4g. To be ascertained |
|  | 6. To be ascertained | 4g. To be ascertained | 6. To be ascertained |
|  | 11. To be ascertained | 6. To be ascertained | 11. To be ascertained |
|  |  | 11. To be ascertained |  |
| CLAIMANT | 4 | 5 |  |
| Name: | Chi-Wei Yuchih | Chu-Chu Yuchih-Yeh |  |
|  | 4d.<br>A123550871<br>Canadian Citizen | 4e.<br>704 Concord Lane,<br>Winfield, IL 60190<br><br>4F, No. 40, Yu-An St.,<br>Hsin-Tien City, Taipei<br>Hsien, Taiwan |  |
|  | 4e.<br>4F, No. 40, Yu-An St., Hsin-Tien City, Taipei Hsien, Taiwan | 4f.<br>Housewife |  |
|  | 4f. To be ascertained | 4g. To be ascertained |  |
|  | 4g. To be ascertained | 6. To be ascertained |  |
|  | 6. To be ascertained | 11. To be ascertained |  |
|  | 11. To be ascertained |  |  |

116

Plaintiff expressly purports to require this information not only as to the actual decedents and actual plaintiffs but as to each of their "representatives, agents, attorneys, and any other person purporting to act on their behalf." Not relevant or reasonably calculated to lead to the discovery of admissible evidence. Invades rights of privacy.

SPEISER KRAUSE

DATED: March 17, 2004

Douglas W. Schroeder, Esq.
John J. Veth, Esq.
Attorneys for Plaintiffs

**117**

**EXHIBIT L**

John J. Veth, Esq. [SBN 132097]
Douglas W. Schroeder [SBN 138679]
SPEISER KRAUSE
One Park Plaza Suite 470
Irvine, California 92614
(949) 553-1421 Telephone
(949) 553-1346 Facsimile

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| Hsiu-Chuan Huang, et al. | ) This document relates to: |
| | ) Case No.: CV 03-5943 CAS (JTLx) |
| Plaintiffs, | ) Case No.: CV 03-5938 DDP (CWx) |
| v. | ) Case No.: CV 03-5937 JFW (SHSx) |
| | ) |
| China Airlines, et al. | ) |
| | ) **PLAINTIFFS' RESPONSES TO** |
| Defendants. | ) **DEFENDANTS' FIRST SET OF** |
| | ) **INTERROGATORIES REGARDING** |
| | ) **FORUM NON CONVENIENS** |
| | ) |
| | ) |

Plaintiffs, who are parties to case numbers CV 03-5943, CV 03-5938 and

CV 03-5937 ("Plaintiff(s)"), hereby respond to the interrogatories contained within

"Defendants' Joint First Sets of Requests for Admission, Interrogatories, and

Page 1

**118**

■ No Docket Entry

**DECEDENT:**           **Chun-Ruey Wu**
Speiser Krause File No.    1268.047
ID#:                  A100094905
DOB:                04/07/49
Age at Death:         53
Marital Status:        married
Education (years):     16
Educational Degree:    BA in Business
Occupation:          Vice executive manager & employee in foreign Trade Co. in U.S.A.

Estimated Annual Income:    $45,750 (USD)
Estimated Net Worth at Death:   $468,750 (USD)
Address at death:       No. 28, Alley 1, Lane 27, Sec. 5, Ming-Sheng East Rd., Taipei, Taiwan
Inheritance Tax:       To be ascertained

| CLAIMANT | 1 | 2 | 3 |
|---|---|---|---|
| **Name:** | **Mei-Chan Tien** | Wei-Shin Wu | Wei-Ling Wu |
| Relationship: | Wife | Daughter | Daughter |
| DOB: | 10/13/1953 | 11/23/76 | 11/23/1976 |
| Address: | No. 28, Alley 1, Lane 27, Sec. 5, Ming-Sheng East Rd., Taipei, Taiwan | No. 28, Alley 1, Lane 27, Sec. 5, Ming-Sheng East Rd., Taipei, Taiwan | New York (To be ascertained) |
| ID #: | To be ascertained | A22458327 | F124236982 |
| Education: | 12 | 17 | 16 |
| Degree: | high school | University | BA in Business & Finance |
| Occupation: | Housewife | To be ascertained | Financial Analyst |
| Dependent on Decedent?: | Yes | Yes | Yes |
| Approx. Monthly Amount: | 3000 (NTD) | $2,000 (USD) | $1,000 (USD) |
| Treated by Doctor: | Yes | No | Yes |

119

| | Chun-Ruey Wu | |
|---|---|---|
| Place of Birth: | Taiwan | |
| Nationality: | Taiwan, R.O.C. & US Green Card | |
| Physician Info. | To be ascertained | |
| Burial Info. Where, cost, who paid and to whom? | Taiwan, about NT$1,000,000, Claimants | |
| Personal Reps. Court/Atty. Info? | To be ascertained | |

| CLAIMANT | 1 | 2 | 3 |
|---|---|---|---|
| Name: | Mei-Chan Tien | Wei-Shin Wu | Wei-Ling Wu |
| Place of Birth: | Hsinchu Hsien, Taiwan | Taipei | Taipei |
| Nationality: | U.S. Citizen | U.S. Citizen | U.S. Citizen |

States.

There may be other witnesses with information relating to the liability of China Airlines and Boeing. For example, China Airlines and Boeing identified certain persons in their respective initial disclosures. The names and location of other individuals is currently the subject of discovery and will be provided when we receive the information. Discovery is continuing.

SPEISER KRAUSE

DATED: January **5**, 2004

John J. Veth, Esq.
Douglas W. Schroeder, Esq.
Attorneys for Plaintiffs

2

Garrison, Melora-LA

| | |
|---|---|
| **From:** | Garrison, Melora-LA |
| **Sent:** | Thursday, June 10, 2004 12:00 PM |
| **To:** | Gretchen M. Nelson Esq. (E-mail); Stuart R. Fraenkel Esq. (E-mail); Brian Alexander Esq. (E-mail); Francis G. Fleming Esq. (E-mail); Michael Y. Lo Esq. (E-mail); Steven D. Archer Esq. (E-mail); Bruce A. Finzen Esq. (Business Fax); John J. Veth Esq. (E-mail); Douglas W. Schroeder Esq. (E-mail); @Silane, Frank-Condon&F |
| **Cc:** | McLaughlin, Thomas J.-SEA; McIntire, Ronald-LA |
| **Subject:** | CI611 Notice of Ex Parte Application |

Dear Counsel:

Please be advised that Boeing intends to apply ex parte on Monday, June 14, 2004, for leave to file a sur-reply brief in support of its forum non conveniens motion.  The purpose of the sur-reply brief will be to address arguments raised by plaintiffs in their Response to Defendants' Replies.  Please let us know before Monday whether or not plaintiffs oppose such an application.

Melora M. Garrison  |  **Perkins Coie LLP**
1620 26th Street, Sixth Floor South
Santa Monica, CA 90404-4013
*mgarrison@perkinscoie.com*
310.788.3229 (p)  |  310.843.1247 (f)

1

SCANNED

Garrison, Melora-LA

| From: | John J. Veth [jjv@ca.speiserkrause.com] |
|---|---|
| Sent: | Thursday, June 10, 2004 4:03 PM |
| To: | Garrison, Melora-LA |
| Cc: | @Silane, Frank-Condon&F; Brian Alexander Esq. (E-mail); Bruce A. Finzen Esq. (Business Fax); Francis G. Fleming Esq. (E-mail); Gretchen M. Nelson Esq. (E-mail); McIntire, Ronald-LA; McLaughlin, Thomas J.-SEA; Michael Y. Lo Esq. (E-mail); Steven D. Archer Esq. (E-mail); Stuart R. Fraenkel Esq. (E-mail); Douglas W. Schroeder |
| Subject: | re: CI611 Notice of Ex Parte Application |

Ms. Garrison,
Plaintiff counsel have discussed the issue and request that you inform
the court in your application that "Plaintiffs defer to the discretion of
the Court." Give me a call if you have a question. Thanks.
jack


On Thursday, June 10, 2004 11:59 AM, Garrison, Melora-LA wrote:
>
>Date: Thu, 10 Jun 2004 11:59:50 -0700
>From: Garrison, Melora-LA
>To: "Gretchen M. Nelson Esq. (E-mail)" <gnelson@kreindler.com>,
>Subject: CI611 Notice of Ex Parte Application
>
>Dear Counsel:
>
>Please be advised that Boeing intends to apply ex parte on Monday, June 14,
>2004, for leave to file a sur-reply brief in support of its forum non
>conveniens motion.  The purpose of the sur-reply brief will be to address
>arguments raised by plaintiffs in their Response to Defendants' Replies.
>Please let us know before Monday whether or not plaintiffs oppose such an
>application.
>
>Melora M. Garrison  |  Perkins Coie LLP
>1620 26th Street, Sixth Floor South
>Santa Monica, CA 90404-4013
>mgarrison@perkinscoie.com
>310.788.3229 (p)  |  310.843.1247 (f)
>
>
>NOTICE: This communication may contain privileged or other confidential
>information. If you have received it in error, please advise the sender by
>reply email and immediately delete the message and any attachments without
>copying or disclosing the contents. Thank you.


John J. "Jack" Veth

Speiser Krause
1 Park Plaza, Suite 470
Irvine, California 92614

Telephone:   949.553.1421
Facsimile:   949.553.1346
E-Mail:      jjv@ca.speiserkrause.com
Website:     www.speiserkrause.com

1